## CALIFORNIA NORTHERN RAILROAD CO. v. GOULD.

THE Act of Congress of August, 1852, which gives to railroad and other companies, on complying with certain conditions, a right of way over the public lands, does not confer upon the companies availing themselves of its provisions the right to enter upon premises in the actual occupancy of a settler without compensating him for the damage done to his possession.

The purpose of the Act of Congress was merely to give a right to enter upon the public lands, assuming them to be vacant, and its effect is to relinquish to the companies complying with its requirements any claim for compensation that might belong to the United States, as proprietor, under any proceeding, by virtue of a State law, to appropriate the land for public use.

A settler upon the public lands in this State, having no other title than that of occupancy, cannot, consistently with the policy of the General Government and of the State in reference to such lands, be treated by the Courts as a naked wrong-doer. As against persons claiming a simple privilege like that conferred upon railroad companies by the Act of Congress of August, 1852, he has an equitable right to his possession and improvements which the Courts will protect.

APPEAL from the Fifteenth Judicial District.

The facts are stated in the opinion of the Court.    Defendant had judgment in the Court below and plaintiff appeals.

*W. W. Stow,* for Appellant.

I.    Plaintiff is entitled to the equitable relief prayed for and the remedy chosen is the proper one.    The Act of Congress under which plaintiff claims the right does not give to railroad companies the fee of the land or any estate therein, except a " right of way," an " easement," *i. e.:* a possessory right for the purposes of the railway—the fee and estate remaining in the United States or its grantees.    The parties, then, occupy this attitude : A right of way is vested in plaintiff.    Defendant disputes that right and is in pos-

session.   Plaintiff asks for a judgment that the right be adjudged to it, and it be allowed to exercise it.   If plaintiff had brought ejectment it would have only determined the right of possession at the date of the ouster alleged in the complaint.   The writ might issue ; plaintiff under it obtain possession, and lay down its railway ; but the moment its employés left, defendant could reënter, remove the track, etc., and thus a perpetual squabble would be kept up, unless a Court of Equity can interfere and determine the right, and also adjudge that defendant be perpetually restrained from interfering with the right as long as it continues.

Story (2 Story's Eq. Jurisp. 189, sec. 852) likens " bills of peace " to bills " *quin timet*," and concedes they may be brought before an action at law to determine the right.   (Sec. 853.)   By a bill of peace we are to understand a bill brought by a person to establish and perpetuate a right, etc.

Again :  " The obvious ground of the jurisdiction of Courts of Equity in cases of this sort is to suppress useless litigation, and to prevent multiplicity of suits."   Under the power of the Court to grant injunctions, plaintiff (the right of way being conceded) has a right to the relief sought in this action.   (*Croton Turnpike Co.* v. *Rider*, 1 Johns. 615 ;  *Ogden* v. *Gibbons*, 4 Id. 150.)

II.   The defendant is not entitled to compensation.   He is a mere trespasser on the land.   He concedes the land to belong to the United States.   Our right of·way was granted to us in 1852. No Preëmption Law, or law authorizing defendant to take possession of the public lands of the United States, was passed until 1853.   (Lester's Land Laws, 205, 208.)

At that time, all United States land was subject to the right of way plaintiff claims.   No right could be acquired under the United States as long as the title remained in the Government except subject to the right of way.   If defendant is to be paid, the grant to plaintiff is nugatory, is without value, is a mockery ; it is defeated by a naked trespasser without any right.

It may be said that the United States Government has acquiesced in defendant's possession ; that the legislation of this State protects settlers upon the public lands in their possession, and these give defendant a right to compensation.

We answer : 1st. Our grant by Act of Congress is superior and paramount to any assumed right of defendant based upon the silence of the Government.    2d. No legislation of this State can divest the title of the United States in the public lands.    (See the Act admitting this State into the Union.)    Nor can it divest a right granted to us by Congress.    Then it cannot do indirectly what it cannot do directly by compelling us to pay for that which is ours by giving defendant a compensation for being, as against us and our grantor, a trespasser.

If the position is sound that compensation must· be made by us, then the Act of Congress avails nothing.    We might proceed under the statute of this State to obtain the right of way and make compensation to defendant.    But surely that was not the design of the Act of Congress.    The inquiry what defendant is to receive compensation for, it seems to us will answer the question.

It is not for the land, or injury to the freehold.    That is granted to us by Congress.    Defendant does not own it, and as against us and our grantors has no right to the possession of it.    Nor can it be for injury to the buildings, fences, orchards, etc.    We do not interfere with them, besides, he erected them without right or color of right, and in subordination to the grant to us.    Nor for disturbing defendant's possession.    His possession is wrongful ; it gave him no right against our positive grant.    What, then, is defendant to be compensated for ?    We are at a loss to see how any right of his known to the law is impaired, invaded, or injured, and the only pretext for compensation is, that he stands in the way of a public improvement.

This question is important for our young State.    Congress has granted the same rights to the railway across the continent, and if upon all the unsold and unsurveyed public lands along the route, individuals can take possession and demand compensation in spite of the grant, then a law of Congress is a nullity.    A grant by the legally recognized owner confers no right.    Instead of the Government owning the land, possession is the highest and only evidence of title, and railroad corporations, instead of building roads upon the estimate of engineers, must provide a large fund to compensate trespassers for a supposed right which is unsupported by law and can only be maintained by force.

*H. O. & W. H. Beatty*, for Respondent.

I. As to the form of the remedy. That form which plaintiff has sought to avail itself of is clearly a bill in equity. When one seeks only to be put into possession of real estate, certainly a Court of Law is the proper tribunal. Here, there is no reason shown why the remedy at law would not be as quick and as efficacious as the equitable relief sought. The suggestion of counsel that if they recovered in ejectment, other trespasses might be committed, appears to us utterly puerile. The sections cited by appellant's counsel from Story's Equity Jurisprudence (852, 853) simply show that bills of peace may be resorted to " by a person to establish and perpetuate a right which he claims, and which, from its nature, may be controverted by different persons at different times and by different actions." Their object is to prevent fruitless litigation and multiplicity of suits. In this case it cannot be claimed that there would be any danger of multiplicity of suits if plaintiff had resorted to the action of ejectment.

II. The next question is, is the defendant entitled to any compensation. Appellant attempts to show that he is not, by assuming two propositions : 1st. That the respondent is a mere trespasser. 2d. That the rights of the railroad became vested by the passage of the Law of Congress in 1852.

We will first notice the latter proposition, because the former is deduced as a sort of corollary therefrom. How a corporation that had no existence until 1860 could have acquired vested rights in 1852 is to us a mystery. The reasoning of counsel seems to be, that although respondent entered innocently into the possession of these lands, which he has occupied for seven or eight years past, the moment this corporation was formed its vested rights related back to the time of the passage of the Railroad Law, and ' the respondent, who for years had been the innocent and meritorious possessor of the land in dispute, by some new-fangled doctrine of relation became all at once a trespasser *ab initio* against a body politic which was not in existence to be trespassed against. It is folly to suppose that Congress by the passage of the Railroad Law intended to prevent all persons from settling on the public lands lest, perchance,

they might interfere with the running of some future railroad.    The utmost extent to which that law could be stretched, as a limitation on the right of settlement on the public domain, is this : It was a grant of the right of way, so far as the Government was concerned, to all future railroads to pass through the public lands.    Every railroad corporation might, under the provisions of the State or local laws, have a right of way over the Government property. So far as the value of the mere naked land is concerned we doubt not that the plaintiff is entitled to it under the Act of Congress. But in order to get at this land, to take it into possession, it has to destroy the possession, or rather, to open the inclosure around other land to which it has no claim.    This is a damage done to the occupiers of the land, for which it is just and equitable that it should pay.

The railroad derives all its authority, powers, and privileges under the State law.    That law provides, that under certain circumstances commissioners shall be appointed to assess damages to the persons interested in the lands through which the road is to pass, " either as owner, claimant," etc.    Compensation is to be awarded to the " owners and persons interested for the taking or injuriously affecting such lands," etc.    (See sec. 28, Railroad Act, Wood's Dig. 600.)    Congress authorizes the railroad, acting in subordination to the State law, to appropriate the right of way.    The State law, under which the incorporation derives all its rights, only permits it to interfere with the claims or possessions of private individuals upon paying for the injury done them.

Can the appellant, which only enjoys its existence and the power to build any road or enter upon any land under the provisions of our State law, disregard that law in one particular, while it acts under it in others ?

The answer to this on the part of the appellant is, that the defendant is a trespasser, and, therefore, not under the protection of the law.    We have, we think, sufficiently shown that if he was not otherwise a trespasser, the Railroad Law did not make him so.

Then, leaving that law out of the question, we hardly think this Court will say that one who enters into vacant public lands in this State, and occupies and improves them, is a mere naked trespasser.

The rights of such persons, acquired under our State laws, have been maintained in this State in some hundreds of cases, many of which have been before this Court, and we never heard them spoken of before as mere trespassers.  The Government has at least indirectly encouraged the settlement and working of its mineral and other public lands, and it is not permissible, under such circumstances, to call all miners and others on such lands, although having no title, naked trespassers.

NORTON, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

The complaint in this action sets forth that the plaintiff has taken the requisite steps to acquire the right of way for its road over certain premises therein described under the Act of Congress of August, 1852, which gives such right over the public lands; that the premises are public lands, unsurveyed and not held for public use by erections or improvements thereon, and that by virtue of said Act of Congress the United States have granted to the plaintiff the use of said premises for the track of its railroad; that the defendant is in the actual possession of the premises, and refuses to permit the plaintiff to construct its road over said premises, and insists that the plaintiff has no right so to do.   The complaint, therefore, asks for a judgment that the plaintiff is entitled to such right of way, and that the defendant has no right, interest, or estate in the premises, and that he be enjoined from preventing or interfering with the construction of the plaintiff's road.

The answer of the defendant denies that the premises are public lands of the United States, and claims title to them derived from the United States.   It also sets forth that the plaintiff had heretofore instituted proceedings under the Railroad Act of this State against the defendant to acquire title to the same premises for the use of its road, and that the sum of $1,086 74 had been awarded to him as compensation, which the plaintiff refused to pay.

The replication denies the title claimed by the defendant.

The Court below, without finding directly whether the premises were public or private lands, decided that the defendant could not be deprived of his right of property, resulting from his possession,

without compensation, to be ascertained as provided by the Railroad Act of this State. It also held, that the plaintiff was estopped by its former proceedings from resorting to this action.

Assuming that the allegations of the complaint are true, and this appears to be the basis upon which the conclusions of the Court below are placed, the proceedings taken by the plaintiff under the Act of Congress had the effect to invest it with the right to enter upon the public lands of the United States, certainly so far as to relieve it from the character of intruder or trespasser, and to shield it from any claim for damages on the part of the United States, and to protect it in the enjoyment of the use of the premises and any improvements it might place thereon, against any person thereafter claiming under the United States. But the Act of Congress does not, in terms, grant any other estate or right which pertains to the United States as proprietor of the public lands. It was, doubtless, the purpose of the act merely to give a right to enter upon the public lands, assuming them to be vacant, and its effect is to relinquish to the plaintiff any claim for compensation that might belong to the United States as proprietor under any proceeding under the State law to appropriate the land for public use. But does this confer upon the plaintiff the right to enter upon premises in the actual occupancy of a settler without compensating him for the damage done to his possession? The United States, upon ejecting such an occupant, might not be under any obligation to pay for his improvements, but they may give to him a preëmption privilege, and this is in consonance with the policy heretofore pursued by the General Government toward settlers upon the public lands. There is scarce a doubt but this defendant will ultimately become the owner of an hundred and sixty acres of the land he occupies, with all the improvements, upon paying the Government price of the unimproved land. Our own State laws protect settlers upon the public lands under certain conditions, although the State has no power to give a right of occupancy in the character of proprietor. In view of this policy of the United States and of our own State in regard to the public lands, such settlers cannot consistently be treated by our Courts as naked wrong-doers, having no equitable rights in their improvements as

against persons claiming a simple privilege, like that conferred upon the plaintiff by the Act of Congress. In the case of *Robbins* v. *The Milwaukee & Horican Railroad Co.*, (6 Wisconsin, 636) where lands were taken apparently under a Railroad Act similar to that of this State, the plaintiff was allowed to recover for damage done to his rights as a mere occupant, although expressly refused compensation for the land, because he had shown no other title or right than that of bare occupancy. We think the plaintiff cannot ask the aid of the equitable powers of the Court to enable him to acquire the defendant's actual possession, under these circumstances, without compensating him for the damages which he will sustain.

The judgment is, therefore, affirmed.