## JOHN DORAN AND WILLIAM WILSON *v.* THE CENTRAL PACIFIC RAILROAD COMPANY.

CENTRAL PACIFIC RAILROAD—RIGHT OF WAY OF.—The right of way over a strip of land two hundred feet in width on each side of its road, granted to the Central Pacific Railroad Company by the second section of the Act of Congress, passed July 1st, 1862, extends to and covers all public lands, whether mineral or not.

SAME—MINERAL LANDS.—The proviso to section 3 of said Act, excepting mineral lands from its operation, refers to the alternate sections granted to said company, and has no reference to the grant of the right of way in section 2.

PUBLIC LANDS—CONTROL OF.—The General Government is entitled to the possession of and all the beneficial interest in the public lands, and its grantee takes the same subject to no conditions, except such as are expressed in the grant.

MINERAL LANDS—OCCUPANTS OF.—Mere occupants of the mineral lands, who have entered upon the same for mining or other purposes, have no title or right under which they can maintain possession, as against the United States or its grantee.

POWER OF STATE OVER PUBLIC LANDS.—The State of California has no power to interfere with the public lands within its limits, or grant a license or permission to occupy the same.

PUBLIC LANDS—HOW SOLD.—The only manner in which the right, title, or interest of the United States in or to any of the public lands can pass to or vest in any private person is by means of an Act of Congress directly making the grant, or authorizing the grant to be made in their behalf by some person or officer.

John Doran *et al. v.* Central Pacific Railroad Company.

SAME—PRESCRIPTION—ADVERSE POSSESSION.—No title to the public lands, whether mineral or otherwise, will accrue to any person against the General Government by prescription, adverse possession, or by estoppel *in pais.*

SAME.—No presumption of a grant will arise as against the United States, but the legislative grants, or the letters patent, or something that is made by law their equivalent, must be produced.

RIGHTS OF POSSESSOR OF PUBLIC LANDS. — A naked possessor of public lands is deemed in law the owner of the same, until the General Government, or a person showing title under it, makes an entry upon the same, and when this is done, the right or claim of the possessor must yield to the paramount authority of the United States, or its grantee.

RIGHT OF WAY OF CENTRAL PACIFIC RAILROAD COMPANY.—The grant by Congress of the right of way over the public lands to the Central Pacific Railroad Company, vests in the company the full and ample right.to enter upon the four hundred feet in width and use the same for railroad purposes, and a mere naked possessor cannot prevent such entry, or recover damages for an injury necessarily done to his possession or improvements by such entry.

.APPEAL from the District Court, Sixth Judicial District, Sacramento County.

The facts are stated in the opinion of the Court.

*George R. Moore* and *J. K. Alexander,* for Appellants.

We admit that the Government is the owner of the fee in this land, but we contend that the policy of the United States and this State has been, and is, to invite and encourage settlements upon the public domain, and that such settlers in good faith ought to be and will be protected in their possession and improvements.

In 1850 the Legislature of this State passed a law for the better regulation of the mines and the government of foreign miners, giving, by necessary implication, whatever rights the State might have in the minerals in the soil, and the right to mine, to all native born or naturalized citizens of the United States who may wish to toil in the gold placers. The 621st section of the Practice Act would seem to imply the same right. (*McClintock* v. *Boyden,* 5 Cal. 97:)

In the case *Irwin* v. *Phillips,* 5 Cal. 146, in discussing this subject, this Court said : " Courts are bound to take notice of the political and social condition of the country which they judicially rule. In this State, the larger part of the territory

consists of mineral lands, nearly the whole of which are the property of the public. No right or intent of disposition of these lands has been shown, either by the United States or the State Government; and, with the exception of certain State regulations, very limited in their character, a system has been permitted to grow up by the voluntary action and assent of the population, *whose free and unrestrained occupation of the mineral region has been tacitly assented to by the one Government, and heartily encouraged by the expressed legislative policy of the other.*"

"When we consider the current and the spirit of the legislation of both Governments, (State and National,) taken in connection with the history and the known circumstances of the country, the conclusion is irresistible that the mines are occupied and worked with the clear assent and encouragement of both Governments. And while the terms of this license, and the relation which the miner sustains to the superior proprietor, may not be expressly laid down, and the duration of the estate not clearly designated by any positive law, and we may not, for these reasons, be able to give any exact definition of the precise nature of the right, yet, one thing is well understood and indisputable, *they are there by the clear license of both Governments, and have such a title as will hardly be divested, even by the act of the superior proprietor.*" (*Merced Mining Co.* v. *Fremont,* 7 Cal. 326 ; *Conger* v. *Weaver,* 6 Cal. 555.)

No necessity can arise where the public weal is not involved that will justify a railroad company in taking the property of private individuals for its own use, without paying a just and adequate compensation therefor. The plea of necessity urged by defendant in justification of its acts is inconsistent with a claim of right or title in itself, and necessarily admits the title and interest of the plaintiffs. (10 Conn. 23.)

The defendant also claims the right to take and use this land and improvements, under the Act of Congress approved July 1st, 1862.

By the second section of this Act, it is provided, " that the right of way through the public lands be and the same is

hereby granted to said company, for the construction of said railroad and telegraph line," etc.

By section third of said Act, it is provided, " that there be and there is hereby granted to the said company, for the purpose of aiding in the construction of said railroad and telegraph line," etc., " every alternate section of public land, designated by odd numbers, to the amount of five alternate sections per mile on each side of said road, on the line thereof, and within the limits of ten miles on each side of said road, not sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption or homestead claim may not have attached at the time the line of said road is definitely fixed; *provided, that all mineral lands shall be excepted from the operations of this Act."*

This language seems to be plain and explicit. All the rights and privileges granted by this Act of Congress to the railroad company, so far as mineral lands are concerned, are excepted and reserved.

If the law referred to did not except mineral lands, it would be, in most respects, similar to the Act of Congress of 1852, giving to all railroad companies the right of way over public land for ten years from the date of its passage. This law was directly involved and passed upon by this Court in the case of the *Northern Railroad Co.* v. *Gould,* 21 Cal. 259. In this case, Mr. Justice Norton, who delivered the opinion of the Court, said : " But the Act of Congress does not, in terms, grant any other estate or right which pertains to the United States as proprietor of the public lands. It was, doubtless, the purpose of the Act merely to give a right to enter upon the public lands, assuming them to be vacant. The action was brought by the Northern Railroad Company against the parties in possession, to compel them to acknowledge the right of the company to cross their lands for railroad purposes. The Court below decided, ' that the defendant could not be deprived of his right of property, resulting from his possession, without compensation, to be ascertained as provided by the railroad Act of this State.' "

*E. B. Crocker*, for Respondents.

The proposition is too clear to be disputed that the fee simple title of the mineral lands of this State is vested in the United States. This principle has been fully recognized by this Court in all its adjudications upon the various questions relating to the rights of miners and other occupants of the mineral lands. While such miner and occupant is treated as between himself and all other persons but the United States as the owner of the land and the mine, yet the title of the National Government to the land and the mines, and its right to dispose of the same, has been fully recognized. (*Irwin* v. *Phillips*, 5 Cal. 146 ; *Tarter* v. *Spring Creek Co.*, 5 Cal. 395 ; *Hoffman* v. *Stone*, 7 Cal. 46 ; *Merced Mining Co.* v. *Fremont*, 7 Cal. 324, 327 ; *McKeon* v. *Bisbee*, 9 Cal. 142 ; *Hughes* v. *Devlin*, 23 Cal. 501.)

The Act of Congress provides that all persons entering or settling upon land of the United States, until duly authorized by law, shall forfeit all right to the land, and may be removed by the United States Marshal, by order of the President. (2 U. S. Stat. at Large, 445.)

Our next proposition is, that the superior proprietor, the Government of the United States, has, for great National purposes, granted the right of way to the defendants over all the public lands, including mineral lands : First—by the Act of Congress of August 4, 1852. (10 U. S. Stat. at Large, 28.) Second—by the Pacific Railroad Act. (12 U. S. Stat. at Large, 491.) By the Act of 1852, the right of way *over all public lands* is granted to all railroad companies chartered within ten years after its passage. The defendants were incorporated in 1861, prior to the Act of July 1, 1862, and less than ten years after the Act of 1852, and are, therefore, entitled to the benefits of this law.

By section 2 of the Pacific Railroad Act, the right of way through the public lands is granted to the Union Railroad Company four hundred feet wide, including land for all neces-

32

sary depots, workshops, etc., and the United States agree to extinguish the Indian title thereto.

By section 9, the defendants are authorized to construct a railroad line in the State of California, "upon the same terms and conditions, in all respects," as the Union Railroad Company.

Both of these Acts contain a direct and positive *grant* from the United States, the owner of the land, of the right of way over the public lands. Under these Acts the defendants claim the right to enter upon the premises occupied by the plaintiffs, for the purpose of constructing their railroad, and that the possession and occupation of the plaintiffs, and their claim to the mines thereon, were subordinate and subject to these grants made to the defendants.

As has already been shown, the plaintiffs have no title whatever to this tract of mineral land, as against the United States and those claiming under them, and it follows that they can claim no damages for any alleged injury to the mines or improvements, or the trees growing thereon. They form part of the land, and are subject to the same rule which relates to the land itself.

Damages are allowed under the Railroad Act of this State only to those having some *title* to the lands over which the road runs. Under sections 28 and 30 of the Act of 1861, (Stats. of 1861, p. 607,) the assessment of damages is to those "having or holding any right, title, or interest" in or to the tract sought to be appropriated for railroad purposes. The claimant, therefore, must have some estate in the land to entitle him to compensation. A mere occupancy without title is insufficient to found a claim for compensation. The mineral lands being excepted out of the pre-emption laws, the claim of the plaintiffs is a mere naked possession, without right, title, or interest, as against the United States and those claiming under them, and they are not, therefore, entitled to compensation under the State Railroad Law. No compensation is allowed for anything but the *title* to the land, or to any person but the owners of some title. In this respect our statute

conforms to the established rules of law upon this subject. (Redfield on Railways, 141, 142 ; Pierce, R. R. Law, 212.)

The next question is, were the plaintiffs entitled to an injunction, even if entitled to compensation? The granting of injunctions in cases like this, where great public interests are involved, is not a matter of absolute right, but depends upon a consideration of all the equities of the case.

Thus, an injunction was refused against a canal company, who, in enlarging their canal, which they had a legal right to do, raised the water of a creek by a dam, and thereby injured plaintiffs' mill. It was held that the latter had an ample remedy at law, and that it was not every case, even of a clear violation of the plaintiff's rights, that would entitle him to an injunction. He must first clearly show that the act itself is illegal. (*Bruce* v. *The Delaware and Hudson Canal Co.*, 19 Barbour, 371 ; see, also, *Hentz* v. *L. I. R. R. Co.*, 13 Barb. 647 ; *Ely* v. *City of Rochester*, 26 Barb. 133 ; *Creanor* v. *Nelson*, 23 Cal. 464 ; *Harper* v. *Richardson*, 22 Cal. 251.)

By the Court, RHODES, J.

This is an action to recover damages for a trespass upon a tract of land claimed by the plaintiff, and for an injunction to restrain the defendant from injuring the said land, and a quartz lode, mining claim, and growing trees thereon. The defendant justifies under the right of way granted to said railroad company by the Act of Congress, passed July 1, 1862. (12 United States Statutes at Large, p. 489.)

It appears from the statement of facts, as agreed to by the parties, that the plaintiffs are in possession of the tract of land described in the complaint, and have thereon the improvements as stated by them ; that the land is mineral land, containing mines of gold ; that the title in fee simple to the lands is now in the United States, and has continued so to be since the cession of California to the United States by Mexico by the treaty of Guadalupe Hidalgo ; that the defendant is duly incorporated under the laws of this State and of the United States, under the name and style stated in the answer, and is

entitled to all the rights and privileges conferred on said railroad company by the said Act of Congress and the laws of this State; that said company has duly located the line of the road across the said lands; that the company has not taken or used, and does not intend to take or use, any more of the said lands than are necessary for the construction of said road, and have done no other damage than was necessary in the construction of said railroad.

The Court, upon the hearing, refused to grant the injunction, and rendered judgment dismissing the complaint.

The errors assigned by the appellants are resolvable into two questions:

1. Has Congress granted the right of way for the railroad and telegraph line over the mineral lands? And,

2. Have the appellants any right, title, or interest, in the tract of land in controversy of such a nature that they can recover damages against the defendant for the entry upon the lands, in pursuance of the grant of the right of way, or can they enjoin the railroad company from proceeding over the land, notwithstanding the grant of Congress?

By section 1 of the Act of Congress above mentioned, "The Union Pacific Railroad Company" is organized, and by section 2 it is enacted that "the right of way through the public lands be and the same is hereby granted to said company for the construction of said railroad and telegraph line," to the extent of two hundred feet in width on each side of the railroad where it may pass over the public lands, with a right to take the stone, timber, etc., from the adjacent lands for the construction of said railroad. It is also provided, in section 9 of said Act, that "the Central Pacific Railroad Company of California, a corporation existing under the laws of the State of California, are hereby authorized to construct a railroad and telegraph line from the Pacific coast, at or near San Francisco, or the navigable waters of the Sacramento River, to the eastern boundary of California, upon the same terms and conditions, in all respects, as are contained in this Act for the construction of said railroad and telegraph line first men-

tioned." This section thus grants to the defendants the right of way over the public lands to the same extent as it is granted by section 2 to the Union Pacific Railroad Company.

It is contended by the appellants that the right of way was not granted by Congress to either of said companies over the mineral lands of the United States, but that the grant is confined to other public lands, and in support of that position, they rely upon the words of the proviso of section 3. That section, after making the grant of the alternate sections of the land, with certain reservations therein expressed, contains the proviso " that all mineral lands shall be excepted from the operation of this Act; but when the same shall contain timber, the timber thereon is hereby granted said company." But there is no exception in section 2 reserving the mineral lands from the operation of the grant of the right of way over the public lands.

The grand object of the Act is to procure the construction of a railroad and telegraph line from the Pacific coast to the Missouri River, not only as a great public enterprise, but for the direct benefit of the General Government, and for that purpose, and to aid in the construction of those works, the General Government has not only granted the right of way and the alternate sections of land, but has loaned its credit in a large amount to the companies engaging in the construction of those works.

It will be observed that it is provided by section 6 that these several grants of land, credit, and the right of way, are made upon the express condition that the company receiving the grants shall perform certain services for the General Government, and shall give the preference in the use of the railroad and telegraph line to the Government. The intention of the Government that the Missouri and the Pacific should be united by a continuous railroad and telegraph line is manifest from the whole tenor and spirit of the Act.

But, if the construction of the proviso of section 3, contended for by the appellants, could be maintained, it would be practically impossible to construct the railroad or telegraph

line under said Act while the present policy of Congress prevails of reserving the mineral lands from sale, for it would be manifestly impossible to run the line of the railroad or telegraph across the Sierra Nevada Mountains, by any route, without passing over public mineral lands.

The company cannot procure the right of way from the appellants, for the obvious reason that they have no title that is sufficient to enable them to make any grant.

The result that would ensue if the proposition contended for by the appellants could be maintained, would be that the company would be obliged to delay at the foot of the mountains until Congress shall change its policy, and bring the mineral lands into market, and until the lands shall have been sold by Congress, and the right of way shall have been procured by the railroad company from the purchaser.

Such a result is clearly in conflict with the meaning and intent of the Act as would practically defeat its operation, so far as California and Nevada are concerned.

But, in our opinion, that construction of the proviso is not warranted in view of the obvious meaning of the section and the plain intention of the whole Act. The first portion of the section sets forth the grant of the alternate sections, without any mention of or reference to the right of way, and immediately following that portion of the proviso above quoted, the section states that "all such lands so granted by this section, which shall not be sold or disposed of by said company within three years after the entire road shall have been completed, shall be subject to settlement and pre-emption like other lands, at a price not exceeding one dollar and twenty-five cents per acre, to be paid to said company." This is substantially a condition annexed to the grant of the lands to the company that the company shall grant the right of pre-emption to its unsold lands, after the expiration of a time limited in the Act. Congress does not purport by the Act to grant to the company the lands over which the right of way is granted, and it would be contrary to all reason to presume that Congress intended

to direct or authorize the company to extend the right of pre-emption to lands not granted to it.

It was, perhaps, necessary in framing the proviso to employ the term "this Act," instead of the words "this section," inasmuch as by the ninth section, two other companies are authorized to construct railroads and telegraph lines "upon the same terms and conditions in all respects" as are contained in the Act for the construction of the railroad and telegraph line by the Union Pacific Railroad Company.   Upon the construction of the whole section, in connection with the plain meaning of the Act, it is apparent that the proviso has relation only to the alternate sections granted, and not to the lands over which the road might pass under the grant of the right of way.

2. Have the appellants such right, title, or interest in the lands in controversy as will entitle them to the relief sought in this case?

It is admitted that the title in fee simple to the lands is in the General Government. That fact being established, the legal presumption arises that the General Government is entitled to the possession, as well as the whole beneficial interest, and that the grantee of the Government takes and holds whatever interest therein the Government purports to grant, subject to no conditions other than those expressed in the grant.   The fact as admitted, and the consequent conclusions of law as to the right to the possession, casts upon the appellants the burden of overcoming the presumption and proving that they are entitled to the possession, or hold some other right, title, or interest in the land, derived under or through the United States.

In the complaint, the plaintiffs allege that they are, and have been since 1859, the owners in fee and in the actual possession of the premises, but they set up no other right in the land. The allegation of the ownership of the plaintiffs is denied in the answer.   It does not appear from the agreed statement of facts, or the findings of the Court, that the plaintiffs have any right in the land, but simply that they have the present possession.

The mere statement of these facts affords a complete answer to the question as to whether the plaintiffs are entitled to the relief they have prayed for in the complaint.

But in order to obviate the apparently inevitable conclusion resulting from these facts, that the appellants do not hold any right in the lands that will enable them to prevent the defendants from entering, in pursuance of the grant of the right of way, or that will entitle them to recover damages for the entry, the appellants say that the Court found that the lands in controversy were public mineral lands of the United States, and they earnestly urge that, by the policy of the United States and this State—by the *tacit consent* of the United States, and the hearty encouragement of this State, and by the *clear license* of both Governments, all citizens are encouraged and permitted to enter upon the public lands of the United States, and occupy them for agricultural and mining purposes; and that when they have entered into possession for these purposes, they, by means of such entry, or by some mode not very fully expressed or accurately defined, acquire and "have such a title as will hardly be divested, even by the act of the superior proprietor."

Does the mere occupant of the public lands hold this undefined title of such a character that he can maintain the possession as against the United States or their grantee? It is scarcely necessary to say that the policy, the encouragement, the license, or even the grant of this State, cannot confer upon any person any right in the lands of the United States. The General Government does not hold its lands as a mere private proprietor, but its control and power of alienation and disposition of its lands are uncontrolled, save by the Constitution of the United States alone. By the Act admitting California into the Union, it is provided that "the people of said State, through their Legislature, or otherwise, shall never interfere with the primary disposal of the public lands within its limits, and shall pass no law and do no act whereby the title of the United States to and right to dispose of the same shall be impaired or questioned."

The claim asserted by the appellants on behalf of the State, of the power to grant or license to occupy the public lands of the United States, is scarcely consistent with the Act of Congress for the admission of California into the Union, if it is meant thereby that the license is valid for any purpose, as against the United States or any one entering or holding under a right, title, or license granted by the General Government. The doctrine laid down in *Hicks* v. *Bell*, 3 Cal. 227, and partially affirmed in a few of the earlier cases in the late Supreme Court—that the mines of gold and silver in the public lands are the property of the State—is without foundation.

The occupation of the public lands, under the policy of the United States respecting their settlement, and with their tacit consent, it cannot be contended will give a right of possession as against the United States or their grantee; but there must be some right of a higher order conferred upon the occupant— at least a title to occupancy must be shown.

The only manner in which the right, title, or interest of the United States in or to any of the public lands can pass to or rest in any private person is by means of an Act of Congress directly making the grant, or authorizing the grant in their behalf to be made by some person or officer. No title will accrue to any person against the General Government by prescription, by adverse possession, or by estoppel *in pais.*

No presumption of a grant will arise as against the United States, but the legislative grants, or the letters patent, or something that is made by law their equivalent, must be produced. This view of the position of the naked possessor of the public lands does not conflict with the current of the decisions of this Court recognizing and affirming his right to be protected in his possession against trespass or intrusion, for he is deemed in law the owner as against all the world, until the General Government, or a person showing legal right or title under it, makes entry upon the lands; but his right or claim must yield to the paramount authority of the United States, or the demands of the grantee.

But it is said by the appellants that the questions discussed

33

in this case have been decided in favor of the occupant in *California Northern Railroad Company* v. *Gould*, 21 Cal. 254. In that case the premises did not appear to be mineral lands, and Mr. Justice Norton, in delivering the opinion of the Court, after stating that the Government "may give him (the occupant) a pre-emption privilege," says : "There is scarce a doubt but this defendant will ultimately become the owner of one hundred and sixty acres of land he occupies, with all the improvements, upon paying the Government price of the unimproved land." In the present case the premises are mineral lands, and, under the laws of Congress, (10 U. S. Statutes at Large, p. 246, Sec. 6,) are not subject to pre-emption. In that case it was not found by the Court below that the lands were public lands. If they were public lands, and the occupant had acquired such rights therein that Congress would be bound to respect his possession, the railroad company could not acquire the right of way without making "just compensation" therefor ; but if such rights had not accrued to the occupant in that case, and if the Act of Congress referred to in that case, (10 U. S. Stats. at Large, p. 28,) did, in effect, grant the right of way over the public lands to the railroad company, then the decision in that case cannot be sustained without impairing the right of the United States to dispose of their public lands ; and in that view the decision is not sustained by the case cited, in the opinion of the Court— (*Robbins* v. *Milwaukee and Horicon R. R. Co.*, 6 Wis. 636)— for in the case cited the lands were not found to be public lands, nor did the railroad company claim a grant by Congress of the right of way ; but the action was an appeal by a person in possession of a tract of land from the award of damages made by Commissioners for the value of his land taken by the company for the use of their railroad. The proceedings were commenced under the statutes of the State providing for railroad companies taking the lands of private persons for the use of the railroad, upon their making compensation and paying damages ; the land so taken being deemed to be taken for public use. The Court held that "to enable the plaintiff to

recover he must show some title. * * * There can be no presumption of title in a proceeding of this kind; it must be shown, and compensation awarded accordingly." The claimant was in possession, no title being found in the United States, and he was entitled to damages for the injury to his possession.

Proceedings under the statute of this State to procure the right of way over the premises in this case are useless, and would be nugatory if Congress had the power to make the grant of the right of way, for if Congress had the entire title, the grant is complete without the intervention or aid of any person or authority whatsoever. If the theory and arguments of the appellant are correct and sound, the company, in order to acquire the right of way over mineral lands now unoccupied, would be obliged to procure some one to enter into possession of each several parcel, for the simple purpose of buying from them the right of way, and after that had been done, the company would be trespassers against the United States.

A construction of the powers of Congress in making grants, and of the meaning of the Pacific Railroad Act, that will lead to such absurd consequences, should not be adopted unless it is clear and imperative.

In our judgment, the grant by Congress of the right of way over any portion of public land to which the United States have title, and to which private rights have not attached under the laws of Congress, vests in the grantee the full and complete right of entry for the purpose of enjoying the right granted, and no person claiming in his own right any interest in the lands can prevent the grantee from entering, in pursuance of his grant, or can recover damages that may necessarily be occasioned by such entry.

The judgment is affirmed.