[No. 862.]

## VIRGINIA AND TRUCKEE RAILROAD COMPANY, APPELLANTS, *v.* MICHAEL LYNCH, RESPONDENT.

CONDEMNATION OF LAND, TITLE TO—RIGHT OF WAY—COMPENSATION.—
Lynch had the possessory title to certain land, including land that was
laid down on the official maps of Virginia city, but never opened to the
public as a street.   The railroad company obtained from the city the
right of way to lay its track upon said street, and in so doing excavated
it in such a manner as to render the access to his dwelling-house difficult,
and entirely destroyed a public road leading across said street to a quartz
mill owned by him: *Held*, that it was immaterial whether the title
in fee was in the United States or in Virginia city in trust for the pub-
lic, that the prior possessory rights which Lynch had acquired by pos-
session could not be destroyed by the railroad company without com-
pensation.

APPEAL from the District Court, First Judicial District,
Storey County.

The facts are stated in the opinion.

*Whitman & Wood,* for Appellants.

I. The petition was the proper proceeding in the prem-
ises.   (*Spring Valley Water Works* v. *San Francisco,* 22
Cal. 442; *S. F. & S. J. R. R. Co.* v. *Mahoney,* 29 Cal. 118;
2 Comp. Laws, 3461, 3462.)

II. There can be no claim for compensation on the part of respondent as abutting lot owner, provided the use by appellant be a public use. (*Canal Trustees* v. *Haven, et al.,* 11 Ill. 554; *Moses et al.* v. *Pittsburgh R. R. Co.,* 21 Ill. 516; *New Albany & S..R. R. Co.* v. *O'Dailey,* 12 Ind. 551; *Milburn* v. *City of Cedar Rapids,* 12 Iowa, 247; *People* v. *Kerr,* 27 N. Y. 209; *Carson* v. *C. R. R. Co.,* 35 Cal. 325; *Severy* v. *C. P. R. R. Co.,* 51 Id. 194; *Ingram, Kennedy & Day* v. *C. D. &. M. R. R. Co.,* 38 Iowa, 670; *Slatten* v. *Des Moines Valley R. R. Co.,* 29 Id. 152; *Gibson* v. *Mason,* 5 Nev. 283.)

III. The streets of the corporation are subject to the paramount authority of the state to regulate their use for the general purposes of the public good, and the legislature or the corporation may grant the use without compensation. (Pierce Am. R. R. Law, 184; *Philadelphia & Trenton R. R. Co.,* 6 Whar. 25; *Porter* v. *N. M. R. R. Co.,* 33 Mo. 128.)

IV. Even if the settlement under which respondent claims had been made with view to general pre-emption, which could not be under the laws of the United States (Rev. Statutes U. S. 417, sec. 2258), or other acquirement of the realty, the United States had the undoubted right to grant to another, no purchase having been consummated. (*Frisbie* v. *Whitney,* 9 Wall. 187; *The Yosemite Valley case,* 15 Id. 78.) Respondent could acquire no right by prescription against the government of the United States. (*Vansickle* v. *Haines,* 7 Nev. 249.) Nor could he against the city, even if the property were absolutely vested in it. (Dillon on Municipal Corp. secs. 529, 534; *Penny Pot. Landing* v. *City of Philadelphia,* 16'Pa. St. 94; *City of Philadelphia* v. *P. R. R.,* 58 Id. 263; *Henshaw* v. *Hunting,* 1 Gray, 203; *Hoadley* v. *San Francisco,* 50 Cal. 265.)

V. J. C. Clark, through whom respondent derives his claim, recognized the official map and claim of the city, by his application filed in the land-office. This estops his grantee to dispute the same. (*Bollo* v. *Navarro,* 33 Cal. 459; *Dickerson* v. *Chrisman,* 28 Mo. 134; *Roebke* v. *Andrews,* 26 Wis. 318.)

*Lewis & Deal*, for Respondents.

I. The act of congress (Statutes of the United States, sec. 238), was never intended to embrace a city already built, with its streets laid out and built upon, and which is fully organized and incorporated. It is only the parties who have founded, or desire to found a town, that have any rights under the statute. Congress did not intend to give any parties the right to run streets through valuable and extensive improvements placed on the public lands in good faith without awarding compensation. Congress has never arbitrarily authorized any one to oust another from his possession, and to take from him his improvements without compensation, but on the contrary, it has always been the policy to protect all *bona fide* settlers, whether in the cities or upon the agricultural lands of the United States.

II. The statute of limitations runs against a municipal corporation. (5 Ohio St. 594; 8 Ohio, 299; Angell on Limitations, sec. 38; 2 Harris & McHenry, 137; Tyler on Ejectment, 126; 49 Mo. 468; 22 Id. 525; 24 Iowa, 283, and cases there cited; Compiled Laws of Nevada, secs. 1018, 1034.) The board of aldermen had no right to authorize the appellant to destroy the street. (7 Ind. 38; Id. 497; 31 Mo. 180.) The mere survey or platting does not make a street; it must actually be opened. (2 Wats. & S. 320; 7 Md. 500–516; 31 Cal. 554; Harrington's Ct. 98; 6 Mich. 176; 12 Id. 404.)

By the Court, HAWLEY, C. J.:

Appellant, pursuant to the provisions of the act entitled "an act to provide for the incorporation of railroad companies and the management of the affairs thereof and other matters relating thereto," approved March 22, 1865, petitioned the district court of Storey county for the condemnation of certain lands situate on H street, in Virginia city, for the purpose of enabling it to construct a side track and carry on its business for the accommodation of the public, and prayed for the appointment of commissioners to ascertain and assess the compensation for said land.

Petitioner, among other things, alleges that Michael Lynch "is now occupying and claims to own a portion of H street," and that said proposed side track "will pass through, over and across the portion of said street occupied and claimed by the defendant, Lynch."

The defendant, Lynch, in his answer alleges, among other things, "that he is the owner of a certain tract of land, including the ground sought to be condemned," and "that he and his predecessors in interest have been the owners of the said lot of land through which said H street passes for the past thirteen years."

Commissioners were regularly appointed, and after hearing the allegations and proofs of the respective parties they ascertained and assessed the compensation to be paid by the petitioner to the person or persons having or holding any right, title or interest therein at twelve thousand five hundred dollars. Their report was confirmed, and within twenty days thereafter petitioner deposited the money with the clerk, and then petitioned the court for an order directing the clerk to repay and return to it the said sum of twelve thousand five hundred dollars. The court denied this petition and ordered that said money be paid to respondent Lynch. From this order the appeal is taken.

From the statement in the transcript it appears that J. C. Clark, the immediate grantor of the respondent, in September, 1865, filed his declaration of settlement upon the land, in the land-office at Carson City, Nevada; but that the title in fee has never been acquired by the said Lynch or any of his grantors.

The portion of H street occupied by respondent was never opened to the public, but it is laid down as a street upon the official map of the city of Virginia, the survey of the city being made long after the occupancy and possession of the land by the grantors of respondent. There is a quartz mill and dwelling-house, owned by respondent, situate upon the land claimed by him.

For a period of sixteen years prior to the condemnation of the land there existed a public road across H street, which had been used by respondent, in common with the

public, as a means of access to his quartz mill, and by reason of the excavations made by the appellant along said street, this highway had been destroyed and the access to respondent's quartz mill from that portion of Virginia city lying west of H street entirely cut off.

The dwelling-house is situate adjacent to the street, and the excavations destroyed the fence inclosing the house and rendered the access to said house from the street much more difficult. The compensation awarded by the commissioners was for the depreciation in value of the dwelling-house and the quartz mill, and depreciation of the land occupied by the respondent adjoining the cut made by appellant. No question is made as to the correctness of the award, so far as the amount thereof is concerned. From the views we entertain of this case it will be unnecessary to notice many of the important questions that were ably discussed in the oral argument by the respective counsel.

We consider it immaterial whether the title in fee to H street is in the United States or in the municipality of Virginia city in trust for the public. There is no pretense that either have ever granted the title to appellant, the only authority of appellant to make the excavations complained of, independent of the proceedings for condemnation, is a resolution passed by a two-thirds vote of the board of aldermen of Virginia city, which only purports to give and grant to it the right to use, run through and across all the streets which said track will run through and across. Assuming, therefore, without deciding the question, that this resolution was valid without the signature of the mayor, it only gives and grants the right of way to build a side track on H street. It did not, by its terms, authorize appellant to excavate or grade the street so as to destroy, obstruct, or interfere with its use as a street. Admitting, also, for the sake of the argument, that the statute of limitations does not run against the municipal corporation (a question upon which there is great diversity of opinion), and that respondent has no title by prescription to that portion of the land laid out upon the city map as H street, nevertheless we are of opinion that, as an owner

of the possessory title to the land abutting on said street, he had certain rights which are entitled to protection. He cannot, in this proceeding, be treated as a mere naked wrong-doer having no equitable rights in the premises. (*California Northern R. R. Co.* v. *Gould*, 21 Cal. 254.)

His right to use the street as a means of ingress and egress to and from his dwelling-house, and to use the road leading across said street to his quartz mill was acquired long prior to any right of appellant to use the street for any purpose. The rights acquired by respondent were valuable and could not be destroyed by appellant without compensation.

If the right of way could have been enjoyed without further damage than that which usually results from the mere ordinary use of a street by a railroad company laying its track thereon, independent of the questions of excavations or embankments that prevent the use of the street by the owners of lots abutting thereon, then there is a very respectable array of authorities which hold that the owner or occupants of such lots are not entitled to compensation. But none of the authorities cited by appellant's counsel go to the extent that the street, or a highway across the same, could be destroyed or obstructed to the extent shown in this case.

We think the respondent had the right, by virtue of his possessory title to the land, as against everybody except the government of the United States, of this state, or of the municipality of the city of Virginia, to prevent such excavations being made to his injury unless compensation was awarded for the damages resulting therefrom. The city of Virginia is not shown to have ever established any grade upon or over the land condemned. Appellant took the right of way along H street in the condition it found it. No rights were granted to it by the resolution to materially injure the use of the street to the damage of the lot-owners, without making compensation. Whether the legislature or the city authorities could legally grant the power to a private corporation to so change or alter the grade of a street as to prevent its use by the adjoining lot-owners, as a means

of egress or ingress from and to their property, is a question we do not decide. The resolution shows the authority given, and none other is implied. Under all the facts and circumstances of this case, we are of opinion that respondent is entitled to the compensation awarded by the commissioners.

In *Tate* v. *The Ohio and Mississippi Railroad Company*, 7 Ind. 480, the defendant having been granted the right of way over William street, under an act of the legislature and by an ordinance passed by the city authorities of Lawrenceburg, claimed that it possessed every right essential to its enjoyment of the street. It made such an embankment along the center of the street as to prevent ingress and egress to the lots across it. The plaintiff did not claim that any part of his lots were appropriated by reason of the construction of the railroad. He only asked for damages for the obstruction of his easement in the street, and the consequent damages to his property. The city ordinance granting the right of way did not establish the grade upon which the track was to be laid, and the court held that the right must be restricted to "the grade of the street substantially as it then existed." In the discussion of the case the court, after approving the decision in *Haynes* v. *Thomas*, 7 Ind. 38, say: "A street which had been dedicated twenty-five years in front of Tate's lots, owned, occupied, and improved by him for fifteen years, is obstructed by the railroad embankment four and one half feet high. He alleges and proves special damages. In such a case the owner of the lots is entitled to recover for the obstruction of his easement in the street." In answer to a petition for rehearing the court said that the grant of the city "must be understood to mean that the railroad company might so use William street for its track and superstructure as not to obstruct it to the injury of the adjoining proprietors."

In *Lackland* v. *North Missouri Railroad Company*, 31 Mo. 180, the ordinance from the city authorities of St. Charles granting the right of way through Main street, was similar to the resolution in this case. The railroad company built a side track along the main track in the street fronting the

plaintiff's lot, and a switch-track connecting the two others. These tracks rested on embankments which obstructed all passages of vehicles over any part of the street. The question was then presented to the court whether the grant of the right of way authorized the company to go to this extent. The court said: "In construing a grant of power to a private corporation the power must be given in plain language or by necessary implication. Whatever is doubtful is against the corporation."

After reviewing the cases of the *Commonwealth* v. *Erie and N. E. R. R.*, 27 Pa. St. 351, and *Tate* v. *The Ohio and Miss. R. R.*, *supra*, and approving the principles therein decided, the court held that a grant of a mere right of way over the public street did not authorize "the erection of depots, or car buildings, or any other structures, which materially obstruct the use of the street or highway as a public easement," and that it was immaterial "whether the plaintiff owned the ground to the middle of the street or not, as his right of action grew out of his ownership of the lot."

The principles announced in these cases fully support our views of the case under consideration. It is, however, proper to add that the conclusions we have reached are not antagonistic to the general proposition contended for by appellant, that a street may be occupied in common by a railroad and by the public in such a manner as not to abridge the freedom of its use for ordinary purposes, and that when so occupied and used, the abutting lot owners will not be entitled to any compensation.

The court, in *Slatten* v. *Des Moines Valley R. R. Co.*, 29 Iowa, 152, one of the strongest cases in favor of appellant upon this point, expressly state that the general rule which it decides is not in conflict with the decision in *Tate* v. *The Ohio R. R.*, *supra*.

The opinion in *Porter* v. *North Missouri Railroad Company*, 33 Mo. 128, does not disturb the rule announced in *Lackland* v. *North Missouri Railroad Company*, *supra*.

The order appealed from is affirmed.

BEATTY, J., concurring:

I concur in the opinion that even assuming the land taken by the appellant to have been part of a street of Virginia city, the respondent was entitled to compensation for the injury sustained by him as owner of the land contiguous to the cut. I think, however, there is a still more satisfactory reason for affirming the decision of the district court. It appears from the evidence that the land embracing the so-called street was occupied, inclosed and built upon by the respondent or his grantors years before any map of Virginia city was filed in the land-office. When this proceeding was instituted, no street had ever been opened through the land so occupied by the respondent. It is very doubtful, from the evidence, if any survey of this part of the city had ever been made; all that appears with any degree of certainty is that various streets had been platted on a map, and the map some time in the year 1865, recorded in the county recorder's office, and copies filed, one in the local land-office at Carson, and another in the general land-office at Washington. The streets, as platted on the map, run through the inclosure and house of the respondent. The map was filed in the land-office by the direction of the board of aldermen of Virginia city, in assumed conformity to the town site act of congress of July 1, 1864. (R. S., sec. 2382 *et seq.*) I think, however, no authority can be found in that act or anywhere for what the board of aldermen attempted to do. Conceding that they had power to act in the premises at all, which is doubtful, I am entirely satisfied that they had no right to lay out imaginary streets running through valuable improvements, and by that simple process deprive citizens of their property without any compensation. The bare statement of such a proposition seems to me to demonstrate its absurdity.

It may be, and probably is true, that the respondent has not, and that his grantors have never had, any rights in the land inclosed and improved by them that congress might not disregard in favor of another donee; but they had rights which the subordinate officers of the land department, and

more especially the board of aldermen of Virginia city, could not disregard. (See *Yosemite Valley case*, and cases cited, 15 Wal. 78.) They were occupying the land and had improved it, and the size of the tract was no impediment to their right of pre-emption. (R. S., sec. 2385.) In my opinion the respondent had a right of pre-emption in the whole tract occupied by him at the date when this proceeding was instituted. It appears that he or his grantor has a claim pending in the United States land-office for the whole tract, and his claim is superior, under any reasonable construction of the acts of congress, to the claim of Virginia city or the people of the state to the streets platted on the official map after his right of pre-emption had accrued. To say that congress may deprive him of his equitable right of pre-emption is wholly beside the purpose. There is no presumption that congress will do so, and certainly no one else can. In fact, it is not pretended that any one besides the board of aldermen of Virginia city has attempted to do so. All that appears to have been done in the land-office is to file certain applications for lots as they are laid down on the map, and the application of respondent's grantor, which, though it refers to the map as a means of description, that being necessary, distinctly contests the claim of the city by demanding a patent for the whole tract, including those parts of the so-called streets embraced within it. There has been no decision of any officer of the government in favor of the right of the city authorities to extend streets through improved lots, and in view of the provisions of the United States law, it is impossible to believe that such a decision will ever be made.

My conclusion is that the city of Virginia had no title to or control over the land taken by the appellant, and that the resolution of the board of aldermen was of no effect. The respondent having been in possession with a right of pre-emption, is entitled to be fully compensated for the land condemned and the resulting injury to the contiguous land.

I concur in the order of affirmance.

RESPONSE TO PETITION FOR REHEARING.

By the Court, Hawley, C. J.:

When this case was argued, appellant claimed a reversal, solely upon the ground that it was entitled to the money it had paid into court. No question was then made as to the validity of the acts of the commissioners, or as to the correctness of the amount of their award. In fact, it did not appear that any such objections were ever made or relied upon in the court below. These facts induced the writer of the opinion of the court to consider whether the record, viewed in the most favorable light for the appellant, would warrant a judgment in its favor. For this purpose it was then admitted, for the sake of the argument only, that even if the respondent was not the owner of the land marked out upon the official map of Virginia city as H street, still he was entitled to compensation for the injury to his land abutting the street.

A rehearing is now asked for, upon the ground that the commissioners did not, under the provisions of section 3445, 2 Comp. Laws, have "the power to find (and did not, in fact, find) any compensation except for property actually taken."

If this point had been urged upon the argument we should have deemed it necessary to decide whether upon the record it could have been considered, not having been made in the court below, and if so, whether it had any merit. And if we had considered the point well taken we would then have decided the case upon a ground that would have covered the objection now made, for we were then, and are now, satisfied that, upon the facts presented in the record, the respondent has such an interest in the land actually taken by the appellant as entitles him to compensation therefor. This being true, it necessarily follows that, under the rule laid down by this court in *The Virginia and Truckee Railroad Company* v. *Henry*, 8 Nev. 165, the respondent is clearly entitled, in this proceeding, to recover the compensation awarded by the commissioners.

The petition for a rehearing is denied.