[Crim. No. 1435. First Appellate District, Division One.—January 20, 1928.]

In the Matter of LEW SMITH on Habeas Corpus.

Frank V. Cornish for Petitioner.

Earl J. Sinclair, City Attorney, and James M. Koford, for Respondent.

TYLER, J.—*Habeas corpus.* Petitioner was convicted of violating an ordinance of the city of Berkeley which regulates the laying of shingles on the roofs of buildings. The facts of the case, as agreed upon by stipulation, may be briefly summarized as follows: An ordinance was adopted by the city council of Berkeley immediately after the conflagration in that city on September 17, 1923, known as Ordinance 927 N. S., which prohibited the use of wooden shingles on buildings. On May 6, 1924, the people of such city, upon an initiative petition, adopted Ordinance 995 N. S., which restored the right to use wooden shingles for roofing. This ordinance may not be amended or repealed except by a vote of the people. That portion of the last-mentioned ordinance which is necessary for a discussion of the proceeding reads as follows:

"Section 9. All metal flashings used in roof construction shall be properly incorporated with the roofing materials in a workmanlike manner. The supporting members and portion of roofs shall be constructed in accordance with the structural requirements and kinds of materials prescribed by the Building Code of the City of Berkeley for the respective classes of such buildings. The roofs of all buildings shall be sheathed tight before the roofs are laid thereon except that the Building Inspector may permit open sheathing to be laid not to exceed five inches (5″) on centers to receive sixteen inch (16″) wooden shingles, five and one half inches (5½″) on centers to receive eighteen inch (18″) wooden shingles and seven and one-half inches (7½″) on centers to receive twenty-four inch (24″) wooden shingles.

"Section 10. Whenever any roof or the covering thereon of any building heretofore created in the judgment of the Building Inspector is or becomes damaged by the elements or fire or otherwise, to the extent of fifty per centum (50%) of the area of the said roof or covering then the said roof or covering shall be reconstructed or replaced with materials of the kinds and in the manner prescribed by this ordi-

nance for the construction and covering of roofs on buildings hereafter erected. Any roof on any addition or enlargement hereafter made to a building shall conform to the provision of this ordinance for buildings hereafter erected.

"Section 11. It shall be unlawful for any person, firm or corporation to violate any of the provisions of this ordinance or to cause, permit or suffer to be violated any of the provisions of this ordinance. Any person, firm or corporation violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punishable by a fine of not more than five hundred (500) dollars or by imprisonment for not more than three (3) months or by both such fine and imprisonment. Every day during which any violation of this ordinance continues shall be deemed a separate offense and shall be punishable as hereinbefore provided."

Prior to June 1, 1927, petitioner applied to the building inspector for a permit to lay prepared composition roofing on top of the wooden shingles of a frame building which had been erected some twenty years previously, and the permit was refused. Petitioner was, however, granted a permit to repair fifty per cent of the roof. He proceeded to and did lay the prepared composition roofing over the entire surface of the roof. The material was laid on top of the old wooden shingles, which had been nailed to inch boards six inches in width with open spaces between them. The composition roofing so laid complied with the requirements of the ordinance in every respect as to quality. Upon the completion of the work a complaint was sworn to by the deputy building inspector. Petitioner was arrested, tried, and found guilty of a violation of the ordinance and sentenced to imprisonment in the county jail for a period of fourteen days. This application followed. It is petitioner's claim that he has not violated the ordinance, as its manifest object is to insure a solid base for shingles laid upon roofs of buildings so that such roofs may be safe to walk upon in the event of a fire, and the shingles as so laid by him insures this protection; that this intent is recognized by the building inspector who issues permits to all applicants to lay rigid composition roofing known as Johns Manville asbestos shingles or rigid imitation slate shingles over old

shingles without requiring the open spaces between the inch boards on which the old shingles were originally laid to be filled or closed up, but refuses such permits to applicants requesting the privilege of laying the kind of prepared nonrigid composition roofing used by petitioner known as Pabco roofing, which roofing last named, as above mentioned, meets all the requirements of the ordinance as to quality. It is drawn to our attention that the fire hazard is less on buildings repaired in the manner petitioner has performed the work, as is evidenced by the fire insurance rates for frame buildings repaired with prepared composition roofing laid directly on old wooden shingles nailed on inch boards with open spaces between them, the rates under such conditions being six per cent per one thousand dollars valuation for three years, whereas the rate is seven per cent on all frame buildings with wooden shingle roofs which the ordinance permits, whether old or new. It is stipulated that the cost of removing the shingles results in an increased cost of fifty per cent, in consequence of which a large percentage of the inhabitants of the city are affected in making necessary repairs. Under the facts petitioner contends that the roof laid by him and for which act he was convicted is as good and fireproof as a roof of prepared composition roofing nailed directly to inch boards "sheathed tight" without old shingles under it, and that the laying of such roofs over old shingles is a laying on a surface "sheathed tight" within the meaning of the ordinance, and this is the universal practice in all other locations where composition shingles are used. ■ We are of the opinion that counsel for petitioner is correct in his contention and that the requirements of section 9 of the ordinance that roofing be "sheathed tight" is satisfied by the laying of the composition shingles on the old shingles nailed to inch boards with open spaces. ■ It is a familiar rule of statutory construction that common words are to be extended to all the objects which, in their usual acceptation they describe or denote, and that technical terms are to be allowed their technical meaning and effect, unless in either case the context indicates that such construction would frustrate the real intention of the law-making power. Technical words when relating to a trade, when used in a

statute or ordinance, dealing with the subject matter of such trade, are to be taken in their technical sense and will be so construed unless the context or other considerations show a contrary intent. The word "sheathing," so far as our investigation has led us, has never been defined by the courts, nor have we been able to find any dictionary on architects and buildings that limits the use of the word exclusively to the plates or boards covering the rafters upon which shingles are nailed. Lexicographers define the term as being a covering and such covering is not confined to lumber alone, but may include any waterproof material. Among the various definitions we find the following: "The first covering of boards, or of waterproof material on the outside wall of a frame house or on a timber roof; also the material so used." Webster's Dictionary—"That which sheathes or covers, or protects, or may be used for that purpose." Century Dictionary—"Sheathing—in carpentry, a covering or lining to conceal a rough surface, or to cover a timber frame. In general, any material, such as tin, copper, slate, tiles, etc., prepared for application to a structure, as covering." When made with asbestos or "with magnese-calcite it is used for fireproofing."—Sturgis, Dictionary of Architecture and Building. Under the heading of Sheathing, Roget's International Thesaurus of English Words and Phrases, sheathing is referred to as a covering and when applied to a roof is said to include thatch, tile, or shingles. ▇ Under these definitions it seems plain to us that the word sheathing both in its general and technical sense means a mere covering of any material and that consequently the shingles on a wooden roof are as much "sheathing" as the boards which support them. They are a covering within the meaning of that term. That the boards or plates supporting shingles are "sheathing" to the extent that they in part cover a roof there can be no question, but by the same token so are shingles, for they, too, constitute a covering. It would have been an easy matter for those responsible for the existence of the ordinance to have defined the character of sheathing that they intended, as is usual when the term is used in building contracts, but they did not see fit to do so, for the ordinance is silent upon the subject. It follows from what we have said that the nonrigid shingles which

petitioner placed upon his roof were placed upon a surface or roof that was covered or "sheathed tight" within the meaning of that term as defined by all authorities upon the subject. To hold otherwise would be to give the term employed an interpretation not sanctioned by any authority, at least not any that has come to our attention, and one that would be at variance with both its common and technical acceptation. In so far as the object of the ordinance may be considered as a protection against the fire hazard, such hazard is as much reduced by the manner of the repairs here made as it would be with the shingles removed and the open spaces filled up, and certainly more so than if wooden shingles had been installed on open spaces, which, in particular cases, the ordinance permits. The construction contended for by respondent would impose a useless expense upon the property owners and one no doubt not contemplated by them in the adoption of the measure they initiated. This conclusion renders unnecessary a discussion and determination of the constitutionality of the ordinance as being a valid exercise of the police power.

The writ is granted and the petitioner discharged.

Knight, J., and Cashin, J., concurred.