[Civ. No. 7336. Fourth Dist. Oct. 28, 1964.]

C. F. SEHLE et al., Plaintiffs and Appellants, v. PRODUC-
ING PROPERTIES, INC., Defendant and Respondent.

Snyder, O'Neil & Hancock and W. Cloyd Snyder for Plaintiffs and Appellants.

O'Melveny & Myers, Richard C. Bergen, Sidney H. Wall, Owen C. Olpin and Edward J. McAniff for Defendant and Respondent.

BROWN (Gerald), J.—The plaintiffs C. F. Sehle and his wife Helen N. Sehle appeal from a judgment of the trial court holding the defendant Producing Properties, Inc., had a right under an existing agreement to continue producing oil through three wells traversing the Sehle land.

By lease on December 29, 1954, the Sehles gave Tut C. Lee the right to drill and produce oil from three of their lots in Huntington Beach. The duration clause provided the lease was to run for one year and so long thereafter as oil or gas or other hydrocarbon substances were produced from the property.

An addenda was executed the same day, giving the lessee the right to drill traverse wells under or through the property, for which a percentage royalty on oil produced would be paid. No duration was mentioned for this new right. The lease and addenda were assigned the same day by Lee to Joseph R. Neaves. Later Producing Properties, Inc., succeeded to the entire interest of the lessee, and ultimately became the only defendant in the case.

In January 1955 an amendment replaced the addenda. The amendment retained the right of the lessee to drill traverse wells, but substituted a flat fee of $500 for each traverse for the percentage. No duration was mentioned in the amendment.

In time one well was drilled to oil sands beneath the Sehle land and four traverse wells were drilled not less than 1,300 feet below the surface. The Sehles received $2,000 for the four traverses. The well drilled to oil sands beneath the Sehle land has been abandoned. Three of the traverse wells are still producing.

The Sehles made a written demand upon defendant to remove all casings and other property from the Sehle land, contending the right to use the traverse wells terminated at the time the well producing from oil sands beneath their land was abandoned. When the demand was refused the Sehles

brought this action to quiet title to the land. The only casings or property concerned are at least 1,300 feet below the surface of the Sehle land.

The trial court concluded that although the right granted in the lease to produce oil directly from the property had terminated, the right to use the traverse wells was still in effect and would remain effective until oil or gas production through them ceased.

The question presented to us is whether the right to use and maintain the traverse wells terminated when the well producing from oil sands beneath the land was abandoned. The answer is ''No.''

 The Sehles argue the lease and amendment constitute a single instrument which is controlled by the duration clause in the lease; that the entire agreement ended when the well producing from the oil sands beneath their land was abandoned; that to hold otherwise would permit defendant to drill unlimited traverse wells for an indeterminable period. They rely upon Civil Code, section 718f which provides: ''A lease of land for the purpose of effecting the production of minerals, oil, gas, or other hydrocarbon substances from other lands may be made for a period certain or *determinable by any future event* prescribed by the parties but no such lease shall be enforceable after 99 years from the commencement of the term thereof.'' (Italics added.)

They contend the duration clause of the lease provides the future event, namely, cessation of production from their land.

This position is untenable. The lease and amendment are separate agreements and create distinct interests for different purposes and different considerations.

The lease created a determinable fee in a *profit à prendre* in the Sehle land (*Dabney* v. *Edwards,* 5 Cal.2d 1, 11 [53 P.2d 962, 103 A.L.R. 822]; *Callahan* v. *Martin,* 3 Cal.2d 110 [43 P.2d 788, 101 A.L.R. 871]). This is a right to take something from the land itself such as oil or gas (18 Cal. Jur.2d, Estates, § 6, p. 390). Although the determinable interest conveyed by the lease has terminated, it does not necessarily follow that the interest created by the amendment has similarly ended.

 This latter interest is an easement deriving no vitality from the *profit à prendre* created by the lease. An easement as distinguished from a *profit à prendre* is an interest in land in the possession of another which creates a limited interest. (Rest., Property, § 450 (1944).) It is primarily

". . . the privilege of doing a certain act on . . . another's property." (*Wright* v. *Best,* 19 Cal.2d 368, 381 [121 P.2d 702].) Drilling the traverse wells and their continued use amount to the exercise of a limited use. They derive their vitality from a *profit à prendre* in neighboring land. There is nothing coupling the *profit à prendre* in the Sehle land with the easement granted in the amendment. Absent a showing that the two grants are connected, the duration of one type of interest in an instrument does not limit the duration of a grant of another distinct interest in the same instrument. (*Robinson* v. *Crescent City etc. Co.,* 93 Cal. 316, 319 [28 P. 950].)

 This construction does not give defendant the unbridled right to drill traverse wells for an indeterminable period. Indeed, defendant concedes it has no right to drill additional traverse wells; its only interest is to maintain the existing three wells. (*Winslow* v. *City of Vallejo,* 148 Cal. 723, 725 [84 P. 191, 113 Am.St.Rep. 349, 7 Ann.Cas. 851, 5 L.R.A. N.S. 851].) The judgment limits defendant to the three traverses for a time so "long as oil or gas can be produced therefrom." This period of time is measurable to the same extent as the duration provided in the original lease.

Judgment affirmed.

Griffin, P. J., and Coughlin, J., concurred.