[Civ. No. 12029. Third Dist. Aug. 19, 1969.]

PLACER COUNTY WATER AGENCY, Plaintiff and Respondent, v. EVON JONAS, Defendant and Appellant.

Lally, Martin, & Chidlaw, William T. Chidlaw and Monte E. McFadden for Defendant and Appellant.

Kronick, Moskovitz & Vanderlaan and Marcus Vanderlaan for Plaintiff and Respondent.

BRAY, J.*—In this condemnation suit, defendant Evon Jonas appeals from judgment in favor of plaintiff, raising solely the question of whether defendant had any compensable rights in certain United States government lands in the Tahoe National Forest.

## FACTS

Within the boundaries of that forest the government owns in fee Parcel 46. In March 1963 Placer County Water Agency (hereinafter "Agency") received from the Federal Power Commission a license for the Middle Fork American River Project (hereinafter "Project"). Thereafter, in connection with the various facilities forming a part of said Project, and on August 27, 1963, Agency filed this action in eminent domain against a number of defendants to eliminate all private claims in 78 parcels of land in the forest. In addition to named defendants, the usual "all persons unknown" were included as defendants. As to Parcel 46, the complaint alleged that the only claim known to plaintiff was an alleged invalid mining claim in the name of Walter White. Agency received a quitclaim deed from White and the action was dismissed without prejudice as to him. The default of various defendants, including "all persons," was entered. Subsequently, Agency learned that appellant Evon Jonas claimed an interest in Parcel 46. By stipulation the default judgment was set aside as to him. Jonas answered. A pretrial conference order provided, in effect, that the issue to be tried was whether Jonas had any compensable interest in Parcel 46, and also in any larger parcel of which it was a part, and if so, the amount of damages due him for such interest. The trial consisted mainly of stipulations. The court found that Jonas had no such compensable interest.

Jonas' claim to such interest is based upon the following facts. On July 30, 1956, Jonas received from the United States Forest Service a livestock grazing permit for 1956 covering Parcel 46 and contiguous federal land, and a "preference" granting him a priority for grazing permits thereon for a 10-year period through 1965. Each yer thereafter and through 1965, Jonas, pursuant to his 10-year preference permit,

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

received a temporary grazing permit, except that in 1964 he received a "non-use" permit, and in fact did not run cattle on the land in that year. Such non-use permit, it is agreed, did not affect his rights under the 10-year preference permit. In 1966 he obtained another preference permit, which permit runs through December 31, 1975. He received a none-use permit for the year 1966. He applied for a temporary grazing permit for the year 1967, but at the time of trial had not received one.

As the grazing permits did not allow the permittee to install fences or other facilities, Jonas in 1957 was granted a "Special Use Permit." This permit was superseded by another such permit on May 9, 1963. This allowed him to maintain and use a cabin and fences which he had constructed on the property. These permits declared that the designated special uses were authorized only in connection with a grazing permit, which latter permits covered a greater area than Parcel 46. In every application for a grazing permit filed by Jonas appeared the statement: "I will forfeit the permit . . . whenever the area described in the permit is needed by the Government for some other form of use . . . ," as well as a recital that the permittee would not allow livestock to intrude on any areas upon which grazing was prohibited.

On April 11, 1962, Agency filed its application with the Federal Power Commission for a license for its Project, which application included the Ralston Interbay Dam Road (hereinafter "road"). Parcel 46 is being condemned for the construction of this road. On September 10, 1962, Agency filed an amended application with the commission which also requested the road. In the meantime Agency was negotiating with the United States Forest Service for an agreement containing the conditions to be imposed upon Agency for its use of the national forest land. In September 1962 a memorandum of understanding was entered into between Agency and the Forest Service giving the agreed upon terms and conditions. Among other terms, Agency was specifically authorized by the Forest Service to construct the Ralston Road. No mention is made in the memorandum of any rights or claims of Jonas. On March 13, 1963, after Agency, at the request of the commission, made certain amendments to its application, the commission issued to agency its Federal Power License for the Project. The license was for a period of 50 years from 30 days after March 13, 1963, and approved said road and provided standards for its construction. The road was con-

694

structed commencing June 5, 1963, and came through Jonas' special use area. For at least two years prior to June 5, 1963, Jonas had actual knowledge that Agency intended to construct said road on Parcel 46.

 Jonas contends that his grazing and special use permits were not revoked, modified, made subordinate to, or in any way affected by the issuance of the federal license to Agency or by the execution of the memorandum of understanding between Agency and the Forest Service, and that said permits constitute an interest in real property compensable in eminent domain. It is Agency's position and the finding of the trial court that grazing and special use permits do not constitute compensable interests in real property; that in issuing the federal power license to Agency and in entering into the memorandum of understanding with Agency the government thereby revoked or made subordinate Jonas' permits; that Jonas agreed in his application that any rights he had would give way to any use or need by the government; and that the Project is in effect a joint project of the government, the commission and Agency.

Jonas relies heavily on *Monterey County Flood Control & Water Conservation Dist.* v. *Hughes* (1962) 201 Cal.App.2d 197 [20 Cal.Rptr. 252], where the district brought an action in eminent domain against the defendant to condemn property for a dam and reservoir. A number of questions were decided by the court, one of which Jonas contends applies to the instant case. On one parcel the defendant in the Monterey County case held a grazing *lease* from the United States (not, as here, a mere permit). The defendant contended that the United States, as owner of the parcel, was an indispensable party and should have been joined in the action. The court pointed out that the district in its second amended complaint disclaimed any intention to acquire by the action the title of the United States. It intended only to condemn the grazing-lease interests of the defendant. ". . . Such acquisition of the grazing interests of defendant was proper and reasonable for it would avoid subjecting plaintiff to any claims by defendant for damages for trespass to his interests. Under the circumstances and as the interests of the United States will be in no way affected by these proceedings, we believe the condemnation of defendant's severable interests, as grazing lessee, is permissible, and it is not necessary to join the United States as an indispensable party because its interests are unaffected." (P. 216.) This statement, which is the only one on the

subject of grazing interests in the opinion and constitutes dictum, is far from a determination that whatever type of grazing lease the defendant had constituted a compensable interest. Moreover, the issue with which we are concerned was not discussed. (See *Sproul* v. *Gilbert* (1961) 226 Ore. 392 [359 P.2d 543] (distinguishing grazing leases from grazing permits under the Taylor Grazing Act); cf. *Acton* v. *United States* (9th Cir. 1968) 401 F.2d 896.)

Congress in 1934 enacted the Taylor Grazing Act, providing for the leasing of the public domain not within national forests and other excepted areas. (43 U.S.C., § 315 et seq.) One of the provisions of that act is "creation of a grazing district or the issuance of a permit pursuant to the provisions of this chapter shall not create any right, title, interest, or estate in or to the lands." (43 U.S.C., § 315b.) This indicates the attitude of the government towards grazing permits. The permits in this case were not issued pursuant to the Taylor Grazing Act but pursuant to 16 U.S.C., § 580*l*, which expressly provides that nothing therein shall be construed "as limiting or restricting any right, title, or interest of the United States in any land or resources." The permits issued Jonas expressly state, "This permit shall terminate . . . whenever the area described in this permit is needed by the Government for some other form of use"; moreover, the permits are not assignable. It is obvious that the permits, whether "preference" or temporary, are mere licenses. (See *Osborne* v. *United States* (9th Cir. 1944) 145 F.2d 892 (dealing with a permittee on national forest land).)

In *People* ex rel. *Dept. Public Works* v. *Lundy* (1965) 238 Cal.App.2d 354 [47 Cal.Rptr. 694], the Department of Public Works brought an action in eminent domain to condemn land for a freeway. The defendants there had a revocable license to cross a railroad right of way dividing defendants' property at two points. In holding that this license gave the defendants no compensable rights, the court first pointed out, "A prerequisite to compensation is that a claimant must prove his ownership of an estate or interest in the land being condemned [citations]" (p. 357), and then said, a revocable license "creates no property interest. . . . Licenses, or privileges, which are unenforceable against the fee owner, are not proper subjects of condemnation." (P. 358.)

Section 818, 16 U.S.C., expressly states that the filing of an application for a Federal Power License reserves such property from "entry, location, or other disposal under the

laws of the United States." Agency's original application was filed April 11, 1962. Jonas' original "preference" permit expired in 1965. Thus, any temporary permit issued after 1962 and the "preference" permit issued in 1966 must necessarily be subordinate to the license issued to Agency, based upon its application filed in 1962.

■ "'. . . A license may be revoked by a sale and conveyance of land without reserving the privilege to the licensee or by a lease or mortgage of the same. . . .'" (*Shaw* v. *Caldwell* (1911) 16 Cal.App. 1, 8 [115 P. 941].)

In *Doran* v. *Central Pac. R.R. Co.* (1864) 24 Cal. 245, 257), the court said that a naked posessor of federal lands is deemed in law the owner until the government *"or a person showing legal right or title under it,* makes entry upon the lands; but his right or claim must yield to the paramount authority of the United States, or the demands of the grantee." (Italics ours.) ■ In the instant case the United States government, through the commission, has granted a Federal Power License to Agency for the purpose of developing the water and power resources of the United States, and, as in the case of the grant to the railroad in *Doran,* the licensee's rights must yield to the demands of the government's grantee.

"It is safe to say that it has always been the intention and policy of the government to regard the use of its public lands for stock grazing, either under the original tacit consent or, as to national forests, under regulation through the permit system, as a privilege which is withdrawable at any time for any use by the sovereign without the payment of compensation." (*Osborne* v. *United States, supra,* 145 F.2d at p. 896, an action brought in eminent domain by the government.) *United States* v. *Cox* (10th Cir. 1951) 190 F.2d 293, also a condemnation action brought by the government, held that the bringing of the action constituted a cancellation of the grazing permits. In *LaRue* v. *Udall* (D.C. Cir. 1963) 324 F.2d 428, it was held that the Secretary of the Interior had authority to terminate without compensation grazing permits on public land which was to be exchanged for private land owned by a government contractor working in national defense.

See also *Acton* v. *United States, supra,* 401 F.2d 896, a condemnation action by the government, where ore prospecting permits issued by the government were held to be not vested property rights, but only "tenuous rights of licenses and permits, even though these at times may have value. . . .

[A] license . . . passes to the licensee no estate or interest in the lands." (P. 899.) It is interesting to note that in *Acton* the court relied on the analogy that holders of grazing permits have no compensable rights in government property.

The cases cited by Jonas are not in point. *Red Canyon Sheep Co.* v. *Ickes* (D.C. Cir. 1938) 98 F.2d 308, held equity would protect the holder of a preference grazing permit against an intended transfer of national forest property by the Secretary of the Interior to a private person, which transfer was illegal. However, the case pointed out that if the transfer were legal the holder of the permit would be powerless to prevent the transfer even though it automatically meant the loss of the permit. *Ford & Son* v. *Little Falls Fibre Co.* (1930) 280 U.S. 369 [74 L.Ed. 483, 50 S.Ct. 140], cited by defendant, is likewise inapplicable. There the Federal Power Commission licensed the petitioner for a hydroelectric power project, granting it permission to use surplus water from a federal dam. The petitioner placed flashboards on the crest of the dam. This raised the water level, interfering with the respondents' rights as riparian owners under state law to have the water leave their property at its natural level. In granting an injunction restraining the petitioner from using the flashboards, the court pointed out that the power license was so restricted by law as not to impair operation of the state law or to extinguish rights acquired thereunder. In the instant case defendant's grazing rights are not granted by any state law. *Seaboard Air Line R.R. Co.* v. *County of Crisp of State of Ga.* (5th Cir. 1960) 280 F.2d 873, is to a similar effect. The court held that the license granted to the county by the Federal Power Commission to build a dam made the county liable for damages to property rights held under state law.

*United States* v. *Smoot Sand & Gravel Corp.* (4th Cir. 1957) 248 F.2d 822, held that under a statute of the State of Virginia a riparian property owner had a property right in sand and gravel underlying adjacent tidal waters, and that this right was compensable in a condemnation action brought by the United States government to condemn the land held in fee. Obviously, the landowner's right to the sand was far different than a mere revocable license. Authorities cited by Jonas on his contention that grazing permits constitute *profits a prendre,* and hence an interest in the land, are not in point as none of them deal with federal grazing permits or licenses.

The fact that title 18 of the Administrative Code, section 126, classifies for purpose of state tax assessment certain grazing rights on publicly owned land as "a taxable possessory interest" is of no consequence in solving the problem before us. The concept of "property interests" for taxation purposes is entirely different from that of compensable interests in eminent domain.

In *San Pedro etc. R.R. Co.* v. *Los Angeles* (1919) 180 Cal. 18, 23 [179 P. 393], the court pointed out that " '[t]he principle that a possessory right in public land is private property, and that it may be assessed for purposes of taxation to the person in possession, although in point of law he may have no right against the state or government owning the land, has long been settled in this state. [Citations.] . . .' " The opinion further states that "a bare possession by the sufferance of the real owner is subject to taxation where the estate of the real owner is exempt because the state or the United States is such real owner. . . ." (P. 25.)

While Jonas' interest in the public lands, such as it is, may be subject to taxation by the state, the authorities hereinbefore set forth conclusively establish that in an eminent domain proceeding such interest is not compensable. (See also *People* ex rel. *Dept. Public Works* v. *DiTomaso* (1967) 248 Cal.App.2d 741, 750-751 [57 Cal.Rptr. 293], citing with approval the determination in *People* ex rel. *Dept. Pub. Works* v. *Lundy, supra,* 238 Cal.App.2d at p. 358, that " '[l]icenses . . . are not proper subjects of condemnation.' ")

As Jonas had no estate or interest in Parcel 46, or in the national forest property outside that parcel, he had no right to severance damages. (*People* ex rel. *Dept. Public Works* v. *Los Angeles County Flood etc. Dist.* (1967) 254 Cal.App.2d 470, 477-478 [62 Cal.Rptr. 287].)

Judgment is affirmed.

Pierce, P. J., and Regan, J., concurred.