[No. S009697. Feb. 15, 1990.]

WAYNE K. HUBBARD et al., Plaintiffs and Appellants, v.
BEN BROWN, JR., et al., Defendants and Respondents.

Counsel

Wade R. Thompson and William M. Lyons for Plaintiffs and Appellants.

Mackenroth, Seley & Anwyl, Dennis G. Seley, Robert M. Shannon, Robert A. Cutbirth, Marer, Marer & Schuck and Gerald Z. Marer for Defendants and Respondents.

OPINION

PANELLI, J.—

## I. INTRODUCTION

A motorcycle rider was injured as a result of colliding with a barbed wire gate which had been erected across a road in a national forest by the holder of a federal grazing permit. The injured rider sued the permit holder for negligence. Citing section 846 of the Civil Code (hereafter section 846), which immunizes owners of interests in real property from liability arising out of recreational use of the property, the trial court granted summary judgment for the holder of the grazing permit. A divided Court of Appeal reversed, the majority observing that the regulations governing federal grazing permits declare that the granting of such a permit creates no property

"right, title, or interest" in the permittee. We granted review to decide whether the holder of a federal grazing permit is entitled to immunity under section 846.

In section 846 the Legislature expressed a strong policy that land should be open to recreational use. Section 846 accomplishes this purpose by immunizing persons with interests in property from tort liability to recreational users, thus making recreational users responsible for their own safety and eliminating the financial risk that had kept land closed. The Legislature adopted an exceptionally broad definition of the types of "interest" in property which will trigger immunity. Under the statute, immunity extends to the "owner of any estate or any other interest in real property, whether possessory or nonpossessory." (§ 846.) In contrast, the federal regulation relied on by the Court of Appeal is designed simply to assure that a grazing permittee acquires no interest in federal land that is compensable in eminent domain proceedings. Because the Court of Appeal incorrectly relied on this inapposite regulation to defeat the purpose of section 846, we reverse.

## II. FACTS

Defendant Ben Brown, Jr., occupies some 40,000 acres in the El Dorado National Forest under a United States Forest Service (Forest Service) grazing permit. Under the permit, Brown was authorized to graze approximately 600 head of livestock in exchange for the payment of a grazing fee. By the terms of his agreement with the Forest Service, Brown was obligated to carry out the provisions of an "Allotment Management Plan" (Plan). The Plan, among its other provisions, specified when cattle would be placed on and taken off the range, required placing of salt for livestock and made Brown responsible for maintaining all improvements, including fences, on the allotted range. The permit was effective for nearly 10 years, and gave Brown priority consideration for renewal. Brown's annual grazing fee was approximately $1,000.

Brown left the grazing area open to persons for recreational purposes. In July 1984, plaintiff Wayne K. Hubbard rode his off-road motorcycle on a Forest Service road in the vicinity of Brown's permitted grazing area. Hubbard was injured when he struck an unmarked barbed wire gate which was strung across the roadway. Brown had erected a barbed wire fence and the gate in order to control movement of his cattle on the land.

Hubbard and his wife (Hubbard) sued Brown on a negligence theory, seeking damages for personal injury and loss of consortium. Claiming immunity under section 846, Brown moved for summary judgment. The trial court granted Brown's motion and dismissed, ruling that "under current

law, the permit held by moving parties does constitute an interest in land for purposes of Civil Code section 846." The Court of Appeal reversed. The court agreed with Hubbard that federal grazing permit holders do not acquire an interest in real property within the meaning of section 846. In so holding, the court cited federal regulations which provide that a grazing permittee acquires no right, title or interest in the land.

## III. DISCUSSION

### A. *Section 846*

Section 846 was enacted in 1963. It immunizes the "owner of any estate or any other interest in real property, whether possessory or nonpossessory," from liability arising from the recreational use of the property.[1] ▬ Section 846 was enacted to encourage property owners to allow the general public to engage in recreational activities free of charge on privately owned property. (*Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707-708 [190 Cal.Rptr. 494, 660 P.2d 1168], cert. den. 464 U.S. 915 [78 L.Ed.2d 257, 104 S.Ct.277 ].) The statutory goal was to constrain the growing tendency of private landowners to bar public access to their land for recreational uses out of fear of incurring tort liability. (*Pacific Gas & Electric Co.* v. *Superior Court* (1983) 145 Cal.App.3d 253, 256 [193 Cal.Rptr. 336]; *Parish* v. *Lloyd* (1978) 82 Cal.App.3d 785, 787-788 [147 Cal.Rptr. 431].)

▬ Contrary to the position of the Court of Appeal, we believe the legislative history of section 846 clearly demonstrates that a federal grazing

---

[1] At all times relevant herein, section 846 provided in pertinent part: "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures or activities on such premises to persons entering for such purpose, except as provided in this section. [¶] A 'recreational purpose,' as used in this section, includes such activities as . . . all . . . types of vehicular riding . . . . [¶] An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section. [¶] This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner. [¶] Nothing in this section creates a duty of care or ground of liability for injury to person or property."

permit is an interest in real property sufficient to qualify its holder for the immunity provided by that statute.

As originally enacted, section 846 immunized only "[a]n owner of any estate in real property." (Stats. 1963, ch. 1759, § 1, p. 3511.) In 1980, the Legislature amended section 846 to its present form by inserting the words "or any other interest" and "whether possessory or nonpossessory" into the section's first paragraph. (Stats. 1980, ch. 408, § 1, p. 797.) As the Court of Appeal recounted in its opinion in this case, the purpose of the amendment was to negate limitations placed on section 846 by that court in two previous opinions. Those opinions, *Darr* v. *Lone Star Industries, Inc.* (1979) 94 Cal.App.3d 895 [157 Cal.Rptr. 90], and *O'Shea* v. *Claude C. Wood Co.* (1979) 97 Cal.App.3d 903 [159 Cal.Rptr. 125], held that section 846 immunized only the holders of possessory interests in real property.

*Darr* involved an easement to cross the American River granted to a private gravel company by the State of California. The company constructed a low-level bridge on the easement, from which the plaintiff dove and was injured. The Court of Appeal said that because the easement was a nonpossessory interest in real property,[2] it was not an "estate in real property" such that section 846 applied to immunize its holder. (*Darr* v. *Lone Star Industries, Inc., supra*, 94 Cal.App.3d 895, 900-901.) *O'Shea, supra*, 97 Cal.App.3d 903, involved an action against an earth removal contractor and others by a motorcyclist who was injured while riding in an area in which the contractor had stockpiled removed earth, pursuant to a license from a private property owner allowing him to do so. The trial court had granted the contractor's motion for summary judgment. Reversing, the Court of Appeal held that in enacting section 846, the Legislature did not intend to disturb the common law rule of limited liability to owners and possessors; hence, "[t]he statutory limitation applies to those who have a possessory interest, which includes the right to exclusive occupation as against the injured user." (97 Cal.App.3d at p. 911.) Because the contractor had failed to establish that his license entitled him to possession of the premises as against plaintiff and other third parties, a triable issue of fact remained. (*Id.*, at p. 912.)

■ It is clear that the Legislature intended, when amending section 846, to broaden the scope of the statute so that it would apply to the *Darr*

---

[2] It is not necessary that we decide whether a federal grazing permit gives its holder a possessory or a nonpossessory interest in the permitted land, because section 846, as amended in 1980, applies to all interests in real property, whether possessory or nonpossessory. (See fn. 1, *ante*, p. 193.) It may be noted, however, that grazing permits have been held to be possessory interests for the purposes of taxation. (*Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717, 725 [96 Cal.Rptr. 379].)

and *O'Shea* contexts in future cases. Assembly Bill No. 1966, 1979-1980 Regular Session, which amended section 846, was introduced just three months after the decision in *O'Shea*. As the Court of Appeal in this case noted, reports by both legislative committees that considered the bill cited *Darr* and *O'Shea* as the impetus for the amendment. (See Legis. Counsel's Dig., Assem. Bill No. 1966, 4 Stats. 1980 (Reg. Sess.) Summary Dig., p. 110; Liability-Recreational Use of Land, Sen. Com. on Judiciary 1979-1980 (Reg. Sess.) Feb. 11, 1980.) By amending section 846, the Legislature indisputably intended to remove the *Darr* and *O'Shea* limitations and to immunize the owner of *any* interest in real property regardless of whether the interest includes the right of exclusive possession. Though acknowledging these facts of legislative history and intent, the Court of Appeal nevertheless found that certain provisions of the federal regulations governing grazing permits overrode the Legislature's intention as regards federal lands. We disagree.

### B. *Federal Grazing Permit Regulations*

The majority opinion of the Court of Appeal rests on the premise that the federal government has paramount authority to determine whether an "interest in real property" is created in federal lands. Because title 36 of the Code of Federal Regulations, section 222.3(b) (1989) (section 223.3(b)) states that "[g]razing permits and livestock use permits convey no right, title, or interest held by the United States in any lands or resources," the Court of Appeal reasoned that defendant did not possess an interest in land for the purposes of section 846.

 It is true that the holder of a federal grazing permit is, for the purpose of eminent domain proceedings, a licensee without compensable property rights. (*Osborne* v. *United States* (9th Cir. 1944) 145 F.2d 892, 895-896; *Tidwell* v. *State* ex rel. *Herman* (1973) 21 Ariz.App. 3 [514 P.2d 1260, 1262-1263]; *Acton* v. *United States* (9th Cir. 1968) 401 F.2d 896, 899, cert. den. 395 U.S. 945 [23 L.Ed.2d 463, 89 S.Ct. 2018].) But section 222.3(b), relied on by the Court of Appeal, merely ensures that the holder of a grazing permit does not acquire rights in federal land which are compensable in a Fifth Amendment "taking" context. (U.S. Const., 5th Amend.; *United States* v. *Cox* (10th Cir. 1951) 190 F.2d 293, 296, cert. den. 342 U.S. 867 [96 L.Ed.2d 652, 72 S.Ct. 107]; *Placer County Water Agency* v. *Jonas* (1969) 275 Cal.App.2d 691, 696 [80 Cal.Rptr. 252].)

Applying a recreational use immunity statute to grazing permit holders does not undermine this purpose. More specifically, applying section 846 in this case would not have the effect of limiting or restricting any right, title or interest of the United States in the land involved. As the dissent in the Court of Appeal persuasively and, in our view, correctly argued, the

limitation of an interest in federal lands for purposes of avoiding compensation in eminent domain need not be extended to preclude finding a property interest for purposes of a state immunity statute.

■ California recognizes that lack of an interest in property for purposes of compensation is nonetheless compatible with a recognizable interest for other legislative purposes. For example, "[t]he concept of 'property interests' for taxation purposes is entirely different from that of compensable interests in eminent domain." (*Placer County Water Agency* v. *Jonas, supra,* 275 Cal.App.2d at 698.) This concept has been applied to federal grazing permits. (*Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d at 725-726.) More significantly, a license to do an act or acts on *private* property has been held to constitute a property interest for section 846 immunity purposes (see *Colvin* v. *Southern Cal. Edison Co.* (1987) 194 Cal.App.3d 1306, 1312-1314 [240 Cal.Rptr. 142] [license or easement to place utility poles]; *O'Shea* v. *Claude C. Wood Co., supra,* 97 Cal.App.3d 903, 911 [license to pile dirt]), despite the fact that California eminent domain law, like federal law, declares licenses to be noncompensable in eminent domain proceedings. (*People* ex rel. *Dept. Public Works* v. *Giumarra Vineyards Corp.* (1966) 245 Cal.App.2d 309, 314 [53 Cal.Rptr. 902]; *People* ex rel. *Dept. Pub. Wks.* v. *Lundy* (1965) 238 Cal.App.2d 354, 358 [47 Cal.Rptr. 694]; *Eastman* v. *Piper* (1924) 68 Cal.App. 554, 560-564 [229 P. 1002].)

■ We conclude that the Court of Appeal was in error when it found section 222.3(b) and related federal provisions to be determinative when construing section 846. The phrase "interest in real property" should not be given a narrow or technical interpretation that would frustrate the Legislature's intention in passing and amending section 846. (*In re Smith* (1928) 88 Cal.App. 464, 467 [263 P. 555].) Rather, we believe section 846 should be construed so as to effect the intention of the Legislature in its enactment. (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 95 [255 Cal.Rptr. 670, 767 P.2d 1148]; *People* v. *Belton* (1979) 23 Cal.3d 516, 526 [153 Cal.Rptr. 195, 591 P.2d 485]; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].)

The Court of Appeal discusses the case of *Pacific Gas & Electric Co.* v. *Superior Court, supra,* 145 Cal.App.3d 253, as support for the proposition that section 846 was not intended to immunize owners of interests in land not subject to closure to recreation. But *Pacific Gas & Electric Co.* is inapposite. In that case, plaintiff, boating on Shasta Lake, was injured when his aluminum mast came into contact with Pacific Gas and Electric Company (P.G. & E.) power lines overhanging the water. P.G. & E. owned the land over which its power lines ran, subject to a perpetual right of the federal government to overflow the property with water impounded by Shasta dam.

Finding section 846 inapplicable to immunize P.G. & E., the court first held that because plaintiff's injury took place, not on the P.G. & E. land underneath the lake, but on the navigable waters of Lake Shasta, there was no "entry" or "use" of the P.G. & E. "premises" by plaintiff within the meaning of that statute. (145 Cal.App.3d at p. 257.) The court reasoned alternatively that because all navigable waterways are held in trust by the state for the benefit of the public, and because plaintiff as a member of the public had a right to navigate the lake in his boat, the legislative purpose of section 846 would not be served by applying the statutory immunity to P.G. & E. as against persons using the public waterways whom it had no right to exclude. (*Id.* at pp. 258-259; see also *Charpentier* v. *Von Geldern* (1987) 191 Cal.App.3d 101 [236 Cal.Rptr. 233] [explaining *Pacific Gas & Electric Co., supra*].) However, as we have explained previously, the legislative intent in amending section 846 was to immunize owners of any interest in real property, regardless of whether the interest includes the right of exclusive possession. Thus, to the extent that the Court of Appeal in *Pacific Gas & Electric Co., supra*, 145 Cal.App.3d 253, relied on P.G. & E.'s lack of a right to exclude recreational users as a basis for denying the immunity of section 846, it is disapproved.

As previously discussed, the Legislature clearly intended, when amending section 846, to immunize private owners of easements and of revocable licenses from tort liability to recreational users. Although the land in question in this case is publicly owned and evidently already open to the public for recreational purposes, it does not follow that application of section 846 would fail to serve a legislative purpose. As we have seen, the Legislature in amending section 846 clearly expressed its intention to expand the statutory immunity to the holder of an interest in real property irrespective of his right to exclude the plaintiff or other third parties. (See also *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 749 [140 Cal.Rptr. 905].) ▮ ▮▮▮ ▮ We hold, therefore, that the holder of a permit to graze livestock on federal lands in California is an owner of an interest in real property sufficient to come within the immunity afforded by section 846.[3]

---

[3] Our holding is not affected by the fact that the land involved in this case is owned by a governmental entity. Our determination in *Delta Farms Reclamation Dist.* v. *Superior Court, supra*, 33 Cal.3d 699, 707-708, that section 846 does not immunize state governmental entities (because to so interpret it would be irreconcilable with provisions of the California Tort Claims Act), does not affect the analysis of this case, which involves a private interest in federal land. Nor is the federal government a defendant in this case. We note, however, that the Federal Tort Claims Act makes the United States liable for negligence in the same manner and to the same extent as a private individual would be in similar circumstances. (28 U.S.C. § 2674.) Therefore, section 846 applies to the United States in the same manner it applies to a private property owner. (*Simpson* v. *United States* (9th Cir. 1981) 652 F.2d 831, 833; *Von Tagen by and Through Von Tagen* v. *United States* (N.D.Cal. 1983) 557 F.Supp. 256, 259.)

## IV. Disposition

The judgment of the Court of Appeal is reversed with directions to remand the cause to the trial court to reinstate its judgment of dismissal.

Lucas, C. J., Broussard, J., Eagleson, J., Kennard, J., and Kaufman, J.,* concurred.

MOSK, J.—I dissent. Unlike the majority, I find the scholarly analysis and conclusion of the Court of Appeal to be persuasive. This is not a case for summary judgment; rather, there is a factual conflict that should proceed to trial.

I adopt as my own the opinion prepared for the Court of Appeal by Acting Presiding Justice Sparks, with appropriate deletions and additions, as follows:†

[ ] We come to the central dispute between the parties—the application of [Civil Code] section 846 [(hereafter section 846)]. Plaintiff claims that defendant's grazing permit "can be construed as at the very most, a license. As such, a licensee is not entitled to the protection afforded by Civil Code Section 846." Defendant counters that under the facts of this case his grazing permit is more than a mere license, and suggests that it should be considered as an executed license, and thus the equivalent of an easement. Alternatively, defendant argues that even if the grazing permit constitutes a mere license, a license is an interest within section 846.

In order to determine the interest conveyed by the grazing permit, we first consider the nature of a right to graze cattle on land. We then examine the special character of a federal grazing permit on federal forest lands. Finally, we consider whether such a federal grazing permit is an interest in real property within the meaning of the statute.

### A. *The Right of Pasture in California*

In California, the term "real property" is "defined by section 14, subdivision 2, Civil Code, as 'coextensive with lands, tenements, and hereditaments', to which Blackstone gives the appellation 'things real.' " (*Callahan*

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Acting Chairperson of the Judicial Council.

†Brackets together, in this manner [ ], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions. All footnotes in the Court of Appeal opinion have been deleted.

v. *Martin* (1935) 3 Cal.2d 110, 118 [43 P.2d 788, 101 A.L.R. 871]; see also [Civ. Code,] § 658.) By a residual definition, every kind of property that is not real is personal. ([Civ. Code,] § 663.)

As the *Callahan* court noted, the "common law included, in addition to lands and tenements, in the category of things real, hereditaments, corporeal and incorporeal, and section 14, subdivision 2 of the Civil Code, noted above, preserves this classification. A hereditament, as defined by Blackstone, included not only lands and tenements, but whatsoever passed to the heirs at law, rather than to personal representatives, 'be it corporeal or incorporeal.' [Citation.] Blackstone lists ten sorts of incorporeal hereditaments: advowsons, tithes, commons, ways, offices, dignities, franchises, corodies or pensions, annuities and rents. . . . Of the ancient incorporeal hereditaments listed by Blackstone, several either are not recognized at all in this country, or, if they do not involve rights in or to land, are not classed as things real. But a number of the common-law incorporeal hereditaments which involve rights connected with or pertaining to land persist, and are recognized generally as a species of interest in land, or estate in real property. [¶] The incorporeal hereditament of common is defined by Blackstone as 'being a profit which a man hath in the land of another; as to feed his beasts, to catch fish, to dig turf, to cut wood, or the like.' [Citation.] These are the rights which are described as profits *a prendre* [ ] . . ." (*Callahan,* 3 Cal.2d at pp. 119-120.)

Consistent with this common law history, the right to graze animals on private land, typically called a right of pasture or the common of pasture, has traditionally been characterized as a *profit à prendre.* (See [,] e.g., *Platt v. Pietras* (1980 Fla.[Dist.Ct.]App.) 382 So.2d 414, 417, fn. 1 [cattle]; *Deseret Livestock Co.* v. *Sharp* (1953) 123 Utah 353 [259 P.2d 607, 610] [sheep].) As we have seen, a *profit à prendre,* literally a profit to take, "is an incorporeal hereditament; it is a right to take something from the land of another." (*Gerhard* v. *Stephens* (1968) 68 Cal.2d 864, 878, fn. 7 [69 Cal.Rptr. 612, 442 P.2d 692]; see also *Lynch* v. *State Bd. of Equalization* (1985) 164 Cal.App.3d 94, 102, fn. 4 [210 Cal.Rptr. 335]; *Sehle* v. *Producing Properties, Inc.* (1964) 230 Cal.App.2d 430, 432-433 [41 Cal.Rptr. 136]; *Costa* v. *Fawcett* (1962) 202 Cal.App.2d 695, 699-700 [21 Cal.Rptr. 143]; see also 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 439, p. 620.) As Tiffany recounts it, "[t]he most important profit à prendre, historically considered, is that of pasturing cattle on another's land, usually referred to as 'common of pasture.' . . . [¶] Common of pasture involves the placing of cattle on the land to eat the herbage, in this differing from a right to take herbage from another's land by cutting and transporting it." (3 Tiffany, Real Property (3d ed. 1939) Profits à Prendre, § 845, p. 436.)

At common law a *profit à prendre* was distinguished from an easement. "Taking," a California legal encyclopedia explains, "is the essence of a profit a prendre, and, under earlier cases, was held to distinguish it from an easement, under the rule that one of the features of an easement is the absence of all right to participate in the profits of the soil charged with the easement. However, the Civil Code provisions as to servitudes make no distinction between easements and profits, and in fact enumerate typical profits as easements." (28 Cal.Jur.3d, Easements and Licenses, § 4, pp. 85-86, fns. omitted.) Thus, under the code, the "following land burdens, or servitudes upon the land, may be attached to other land as incidents or appurtena[n]ces, and are then called easements: 1. The right of pasture; 2. The right of fishing; 3. The right of taking game; . . . 5. The right of taking water, wood, minerals, and other things[ ] . . ." ([Civ. Code,] § 801, paragraphing deleted.)

It has been further noted that "[n]either the Civil Code nor the *Restatement of Property* distinguishes easements appurtenant from easements in gross. In fact, Civil Code Section 802 lists the 'right of taking water, wood, minerals, or other things' (i.e., a profit) as one of the 'land burdens' that may be granted and held, whether the burden is or is not appurtenant to land. The *Restatement of Property* notes that the law of the United States recognizes both easements in gross and profits in gross and that the rules with respect to easements and profits can be stated in identical terms. Accordingly, the *Restatement* includes profits under the general heading of easements and treats profits in all respects as a class of easement." (10 Hagman & Maxwell, Cal. Real Estate Law & Practice (1988 rev.) Easements & Licenses, § 343.13, p. 343-20, fns. omitted; see Rest., Property, § 450, special note, pp. 2901-2902.) Thus, "Civil Code section 802 classifies profits and easements *in gross*, identically, as servitudes." (*Gerhard* v. *Stephens, supra*, 68 Cal.2d at p. 880, fn. 11, italics in original.) Among the several listed profits in gross described as "land burdens, or servitudes upon land" which may be granted and held though not attached to land is the "right to pasture, and of fishing and taking game." (§ 802, subd. one.)

Following the classification of the Civil Code and the analysis of the Restatement, [we have] held that for the purpose of determining rights in real property "easements and profits a prendre are indistinguishable." (*Gerhard* v. *Stephens, supra*, 68 Cal.2d at p. 880; see also *Callahan* v. *Martin, supra*, 3 Cal.2d at pp. 118-122.) "Following the common law this court has classified profits *a prendre,* together with easements, as incorporeal hereditaments." (*Gerhard,* 68 Cal.2d at p. 880.) It follows from all of this that "[l]ike other easements, a profit is an incorporeal (i.e. nonpossessory) 'interest' in real property." (10 Hagman & Maxwell, *op. cit. supra*, at p. 343-20.)

Thus, a right of pasture on private property in California constitutes an interest in real property.

### B. *Federal Forest Service Grazing Permit*

But this does not end the question because the right to graze in this case does not involve private property. Instead it involves federal property and emanated from a permit issued by the federal forest service. The question then is whether a grazing permit in a national forest is different from a right of pasture on private property. We conclude it is. The controlling federal statute, 16 United States Code section 580*l* provides: "The Secretary of Agriculture in regulating grazing on the national forests and other lands administered by him in connection therewith is authorized, upon such terms and conditions as he may deem proper, to issue permits for the grazing of livestock for periods not exceeding ten years and renewals thereof: *Provided,* That nothing herein shall be construed as limiting or restricting any right, title, or interest of the United States in any land or resources." This statutory proviso is amplified in the regulations governing grazing permits in national forests. "Grazing permits and livestock use permits convey no right, title, or interest held by the United States in any lands or resources." (36 C.F.R. § 222.3(b).) [¶] [ ]

[The Court of Appeal] had occasion to consider the nature of such a grazing permit on a national forest in *Placer County Water Agency* v. *Jonas* (1969) 275 Cal.App.2d 691 [80 Cal.Rptr. 252]. There the water agency brought an eminent domain proceeding seeking to condemn all private claims in certain governmental lands in the Tahoe National Forest. The issue in the case was whether the defendant, who held United States Forest Service livestock grazing permits issued under 16 United States Code section 580*l*, had any compensable rights. We held that he did not. [It] characterized the permits as "mere licenses." ([275 Cal.App.2d] at p. 697.) Concluding that such revocable licenses created no estate or interest in the forest property, [it] ruled that the defendant permit holder had no right to severance damages. (*Id.*, at p. 698.) In the course of [its] opinion [it] rejected defendant's claim that his grazing permits should be characterized as *profits à prendre.* "Authorities cited by [defendant] on his contention that grazing permits constitute *profits a prendre,* and hence an interest in the land, are not in point as none of them deal[s] with federal grazing permits or licenses." (*Id.*, at p. 697.) Finally, [it] found the fact that the state administrative code classified grazing rights on publicly owned land as a "taxable possessory interest" for purpose of state tax assessment to be of no consequence. "The concept of 'property interests' for taxation purposes is entirely different from that of compensable interests in eminent domain." (*Id.*, at p. 698.)

It may well be that most licenses are properly considered to be interests in real property for purposes of section 846. (See [,] e.g., *Colvin* v. *Southern Cal. Edison Co.* (1987) 194 Cal.App.3d 1306, 1313-1314 [240 Cal.Rptr. 142]; *O'Shea* v. *Claude C. Wood Co.* (1979) 97 Cal.App.3d 903, 911 [159 Cal.Rptr. 125]; see generally, 4 Witkin, Summary of Cal. Law, *supra,* § 481, p. 659.) Indeed, the legislative history of the 1980 amendment to the statute clearly reveals that nonpossessory interests in real property, including licenses, were intended to come within the expanded statutory definition.

As originally enacted in 1963, the statute immunized only "[a]n owner of any estate in real property." (Stats. 1963, ch. 1759, § 1, p. 3511.) In 1980, the Legislature amended section 846 to its present form. (Stats. 1980, ch. 408, § 1.) The amendment inserted the word "or any other interest" and "whether possessory or nonpossessory" into the section's first paragraph. [ ]

But whatever may be the case with [ ] interests in real property, it is indisputable that a grazing permit on federal forest lands "convey[s] no right, title, or interest held by the United States in any lands or resources." (36 C.F.R. § 222.3(b).) As construed by the federal courts, such a permit is a revocable privilege which does not create a property interest in the federal land. "The license to graze on public lands has always been a revocable privilege. 'It is safe to say that it has always been the intention and policy of the government to regard the use of its public lands for stock grazing, either under the original tacit consent or, as to national forests, under regulation through the permit system, as a privilege which is withdrawable at any time for any use by the sovereign without the payment of compensation.' The rights of the . . . permittees in their grazing permits flow from three sources: 16 U.S.C. § 580*l*; Permit, Part 2, § 8(b); and 36 C.F.R. §§ 222.4(a)(1), (6). None of these sources supports their assertion of a property interest in the permits." (*Swim* v. *Bergland* (9th Cir. 1983) 696 F.2d 712, 719, paragraphing deleted.) Since the grazing permit does not create any interest in federal forest lands, defendant's claim that he is an owner of an "interest in real property" within the meaning of section 846 must fail.

As we have seen, the phrase an "interest in real property, whether possessory or nonpossessory" is a technical one which comes freighted with much legal history. As such it must be construed in its technical sense. "[T]echnical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, . . . are to be construed according to such peculiar and appropriate meaning or definition." ([Civ. Code,] § 13.) Obviously, the Legislature did not intend to immunize tortfeasors who have no interest in the real property where the tort occurred. Rather, it intended to immunize only those who own "any estate or any other interest

in real property" and defendant simply does not own any such interest in the federal forest lands. Instead, defendant obtained a personal, contractual right to graze his cattle on the forest service lands. The immunity provided by section 846 is anchored to ownerships of interests in real property and hence does not extend to rights in personalty.

Moreover, given the facts of this case, our construction of the statute reinforces its underlying purpose. "The purpose of section 846," [we have] noted, "is to encourage property owners 'to allow the general public to recreate free of charge on *privately* owned property.' This purpose is achieved by a basic declaration that owners owe 'no duty of care to keep the premises safe' for certain specific recreational purposes." (*Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707-708 [190 Cal.Rptr. 494, 660 P.2d 1168], italics in original and citation omitted.) "In other words, the statutory goal is to constrain the growing tendency of *private* landowners to bar their land to the public for recreational uses because of the threat of gratuitous tort liability." (*Pacific Gas & Electric Co.* v. *Superior Court* (1983) 145 Cal.App.3d 253, 256 [193 Cal.Rptr. 336], italics added.) That purpose would not be advanced by applying the statute when the land in question is publicly owned and is already open to the public for recreational purposes.

The defendant here made no showing that the forest service road on which plaintiff was riding was not open to the public. To succeed on a motion for summary judgment, "the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial." (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) In the absence of such a showing, we may presume that plaintiff was lawfully using the forest service roadway. As [the Court of Appeal] explained in another case involving the use of a public right of way, there a public waterway, "we eschew an interpretation of Civil Code section 846 which would discourage the public from exercising its constitutionally protected free and unimpeded use of navigable waterways." (*Pacific Gas & Electric Co.* v. *Superior Court, supra*, 145 Cal.App.3d at p. 259.) Consequently, we held that "the owner of an interest in real property underlying or adjacent to navigable waters is not entitled to the protection of section 846 as against persons injured while using those waters." (*Ibid.*) By a parity of reasoning, the immunity of section 846 should not apply in favor of [a] grazing licensee against a member of [the] public lawfully using a forest service road open for recreational purposes.

In any event, defendant did not own any interest in real property by virtue of his grazing permit and hence did not come within the terms of the immunity statute. [End of Court of Appeal opinion.]

I would affirm the judgment of the Court of Appeal.